IN THE CIRCUIT COURT OF MARYLAND
FOR BALTIMORE CITY

**MARTEZ CARTER**  \*
5602 Benton Heights
Baltimore, MD 21206  \*

    Plaintiff,  \*

    vs.  \*    Case No.: 24-C-21-003359

**MICHAEL HARRISON**  \*
in his official capacity as Commissioner
of the Baltimore Police Department  \*
601 E. Fayette Street
Baltimore, Maryland 21202  \*

    and  \*

**BALTIMORE CITY POLICE DEPARTMENT**  \*
601 E. Fayette Street
Baltimore, MD 21202  \*

    **Serve On:**  \*
    James L. Shea, Esq.
    Baltimore City Solicitor  \*
    Office of the City Solicitor
    100 North Holiday Street  \*
    Suite 101, City Hall
    Baltimore, Maryland 21202  \*

    And  \*

**MAJOR JAMES HANDLEY**  \*
1730 Bollinger Road
Westminster, MD 21157  \*

    Defendant.  \*

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**FIRST-AMENDED COMPLAINT AND PRAYER FOR JURY TRIAL**

1

NOW COMES MARTEZ CARTER, Plaintiff (hereinafter "Mr. Alford" or "Plaintiff") and brings suit seeking redress against, for unlawful employment practices perpetrated by, Defendants MAJOR JAMES HANDLEY ("Handley"), COMMISIONER MICHAEL HARRISON, and the BALTIMORE CITY POLICE DEPARTMENT (herein "BPD"), (collectively "Defendants"), in violation of the Maryland Fair Employment Practices Act, MD Code Ann., State Gov't. §§ 20-601, *et seq.* and §§20-1001, *et seq.*

Plaintiff incorporates the Complaint filed on August 2, 2021 as if fully set forth herein such that this First-Amended Complaint relates back to the date the initial complaint was filed.

### III. PARTIES

1. Plaintiff is an African American male citizen of the State of Maryland and the United States of America, and resident of Baltimore City.

2. Plaintiff is a 12 year veteran police officer with Baltimore City School Police (BSP), was eagerly seeking the lateral position with Baltimore City Police Department (BPD), and was and is eminently qualified for a position as a police officer with the BPD.

3. Plaintiff applied for and was denied the position twice. He then followed the chain of command trying to seek answers as to why he was denied.

4. After the first time being denied he had to write a letter and explain why he wanted to reapply and ask for permission from Major James Handley to do so.

5. Plaintiff knew Handley was in receipt since he hand-delivered it to Handley. He did not receive a response.

2

6. Plaintiff then reached out to then City Councilman President Mr. Jack Young and explained to him the roadblocks he had been facing in transferring to the BPD.

7. Plaintiff then witnessed Jack Young call the Commissioner Kevin Davis on his cell phone. He was in ear shot and was advised to be quiet.

8. City Councilman President Jack Young asked Kevin Davis why is there another qualified applicant in front of him trying to come over to the City police force and is being stopped by the same guy "James Handley".

9. Approximately five minutes after that phone call between Jack Young and the Commissioner Plaintiff received a phone call from Major Handley G282 apologizing to Plaintiff saying somebody put his folder in the wrong pile, and when could Plaintiff come in and take his physical agility test. Handley then advised that he was in receipt of Plaintiff's letter, and that Plaintiff would be allowed to go through the process for the second time.

10. The following week Plaintiff did his physical agility test by himself. He completed his push-ups and sit ups in the weight room inside of the Central District and completed the 1.5 mile run around City Hall.

11. After Plaintiff successfully completed the test, Sgt. Richardson and Det. Larry Armwood asked who Plaintiff knew because nobody tests by themselves. Plaintiff shrugged his shoulders and Det Armwood said he thought that Plaintiff knew Jack Young. They laughed it off and that was the end of that conversation.

12. Plaintiff did not hear back. He then went through the process a third time. The two prior times Plaintiff successfully passed the preliminary stages of the hiring process. He passed the written test both times and then passed the physical agility test as well.

19. On September 22, 2017, Plaintiff was entering ECU and ran into and spoke with Deputy Commissioner Darryl Desousa. Plaintiff advised him how that he felt that he was being mistreated and that the BPD hiring practices seemed unfair as a result of Major James Handley's conduct. Then Dep. Commissioner DeSouza advised Plaintiff that he understood and believed Plaintiff since something very similar was going on with DeSousa's son's hiring process and James Handley was the person that denied his son as well.

20. Deputy Commissioner Darryl DeSousa was promoted to Commissioner Major James Handley was taken out of Recruitment and put in the Southwest District and Major Brian Hance was Chief of Patrol was then in charge of Recruitment for a short tenure. Plaintiff was advised while Major James Handley was gone from recruitment that he was still in possession of Plaintiff's personnel jacket because they could not locate his folder.

21. When Plaintiff reapplied he received another denial letter signed by Brian Hance that he was banned for life to reapply, but that that decision had been made by Major James Handley.

22. Commissioner DeSousa resigned. At that time, Major Handley was not in charge of recruitment, however, under the new Commissioner, Michael Harrison, Deputy Commissioner, James Gillis interviewed Major James Handley and put him back in recruitment. Plaintiff, therefore, has been subject to going through Major James Handley in order to move forward in the process.

23. On July 25, 2019 Plaintiff took his written examination again and passed and the following week July 31, 2019. Plaintiff successfully completed his physical agility test. The testers advised all applicants to call down to recruitment the following day and see who the applicants' background investigators would be because they would send the results the same day.

5

24. Plaintiff began calling recruitment on August 1, 2019 to ask who his background investigator would be. Plaintiff spoke with a detective on the phone and asked him did he know who Plaintiff's background investigator would be. He advised Plaintiff would need to talk to Major James Handley.

25. Plaintiff called the following day to talk to Sgt Regina Richardson so she could put Plaintiff in contact with Major James Handley. Sgt Richardson wasn't available at the time but Plaintiff spoke with a Sgt Grant who advised that Maj. Handley would not take the call and to try reach him on his cell because he did not have a phone in his office.

26. Plaintiff then called Major Handley on his cell phone several times with no answer. Plaintiff began trying to call him again on August 2, 2019 at 08:17 am. He called 3 times with no answer. Major Handley called back at 8:53 am spoke with Plaintiff for 37 minutes.

27. For 37 minutes Plaintiff tried to explain why he wanted to come to the department and why he would be a good fit. Handley, however told Plaintiff that he should apply to other agencies in surrounding counties.

28. Plaintiff advised that he wanted to serve his community, the one he grew up in. Handley became irritated with Plaintiff and began telling Plaintiff why he believed Plaintiff was not qualified for the job, that Plaintiff was lucky to still have a job, and continued to belittle Plaintiff.

29. Toward the middle ~~end~~ of the conversation he called in Sgt. Richardson and another male sergeant to listen to the remainder of the conversation. He had them introduce themselves (although Plaintiff could not hear the male sergeant's name).

30. Plaintiff inquired why Handley did not have the other officers present from the beginning of the conversation. Handley proceeded to call Plaintiff a "fucking liar" and as he was getting off the

6

phone he called Plaintiff a "fucking nigger" and hung up the phone. ~~Two sergeants witnessed and heard the phone call.~~

31. To date, Plaintiff has been denied a position at the BPD. <u>Plaintiff has followed up on numerous occasions to check the status of his application and was advised that BPD Legal Affairs has his employment folder. Plaintiff successfully passed all requirements for employment with BPD and is qualified to be a Police Officer vis-à-vis his experience as a BCS police officer.</u>

32. It is patently clear that Maj. Handley has a racial bias and animus and has denied Plaintiff employment based on his race, as is evidenced by Major Handley's use of such an egregious and offensive racial slur.

## ADMINISTRATIVE COMPLIANCE

33. Plaintiff filed his EEOC charge on May 26, 2020 within 300 days of the discriminatory acts (Title VII), specifically, within 300 days of Maj. Handley calling him a nigger and denying him employment.

34. The EEOC issued a Right to Sue letter dated May 26, 2021, which was received on June 6, 2021. (See **Exhibit 1**).

35. More than 180 days has passed since Plaintiff filed her charge of discrimination.

36. This suit is brought within 90 days of receipt of the Right to Sue Letter and within two years of the discriminatory acts complained of pursuant to the terms of the Maryland Fair Employment Practices Act (FEPA).

### Count I: Violation of the Maryland Fair Employment Practices Act (FEPA)
### (Race-Based Discrimination)

37. Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

38. Plaintiff was in a protected class (African American) based on his race.

7

39. Defendant Handley refused to hire Plaintiff without any legitimate reason or justification and made his racial bias and animus known when he called Plaintiff a "nigger" in a phone conversation on August 2, 2019.

40. Plaintiff had extensive experience as a Baltimore City School Police Officer and was qualified to be hired as a police officer with the BPD.

41. Defendant Handley's and the BPD's failure to hire Plaintiff constitutes discrimination based on race in violation of the FEPA.

42. No reasons have ever been given to Plaintiff as to why he has not been hired by the BPD. Indeed, Plaintiff passed all the tests and met all the requirements for hiring yet was not hired anyway.

43. The racial discrimination is ongoing since, to this day, Plaintiff has been illegally denied employment at the BPD based on his race.

~~43.~~44. That Plaintiff was not hired despite that he had extensive experience as a police officer with the Baltimore City School Police and passed all of the requisite tests, and that Defendant Handley during the course of his employment used a racial epithet, calling Plaintiff a "fucking nigger" demonstrates more than a mere inference that race was the motivating factor in not hiring Plaintiff and strongly suggests that Handley did not hire Plaintiff because he is an African American.

### Count II: Violation of the Maryland Fair Employment Practices Act (FEPA)
### (Retaliation)

~~44.~~45. Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

~~45.~~46. Plaintiff engaged in protected activity by lodging complaints against Defendant Handley and alleging that he was unjustly being denied hiring and alleging discriminatory animus and bias.

8

46.47.    Plaintiff suffered a material adverse employment action by being denied hiring.

47.48.    There is a causal connection between Plaintiff engaging in protected activity and Defendants' retaliatory actions of not hiring him.

48.49.    Handley's and the BPD's conduct constitutes retaliation against Plaintiff because he engaged in activities protected by the FEPA.

49.50.    Handley and the BPD have offered no reasons for not hiring Plaintiff, and racial bias and animus are apparent from Handley calling Plaintiff a "nigger" after belittling him and telling him he should apply for jobs in other jurisdictions, and otherwise telling him without explanation that he was not qualified for a job as a BPD police officer, even though Plaintiff had passed all required tests.

50.51.    The actions complained of herein violated Plaintiff's right to be free of race discrimination, harassment, and retaliation under State law.

51.52.    The racial discriminatory action detrimentally affected Plaintiff and would detrimentally affect a reasonable person of the same race in that position.

52.53.    Defendants had actual and/or constructive knowledge about the racial discrimination and not only failed to take prompt and adequate remedial action, but instead, participated in the racial discriminatory conduct against Plaintiff by continually refusing to hire him.

53.54.    As a direct and proximate result of this racial discrimination and disparate treatment, Mr. Alford has suffered injury to his reputation, injury to his career, pain, mental anguish, and humiliation, and faces irreparable harm and future and ongoing losses.

### Count III: Violation of Title VII
### (Race-Based Discrimination)

55. Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

9

56. Plaintiff was in a protected class (African American) based on his race.

57. Defendant Handley refused to hire Plaintiff without any legitimate reason or justification and made his racial bias and animus known when he called Plaintiff a "nigger" in a phone conversation on August 2, 2019. Defendant Handley's use of such an egregious racial slur while discussing Plaintiff's job application with Plaintiff give rise to more than a mere inference and evidences that Handley's refusal to hire Plaintiff was with discriminatory intent and purpose.

58. Plaintiff had extensive experience as a Baltimore City School Police Officer and was qualified to be hired as a police officer with the BPD.

59. Defendant Handley's and the BPD's failure to hire Plaintiff constitutes discrimination based on race in violation of the FEPA.

60. No reasons have ever been given to Plaintiff as to why he has not been hired by the BPD. Indeed, Plaintiff passed all the tests and met all the requirements for hiring yet was not hired anyway.

61. The racial discrimination is ongoing since, to this day, Plaintiff has been illegally denied employment at the BPD based on his race.

62. That Plaintiff was not hired despite that he had extensive experience as a police officer with the Baltimore City School Police and passed all of the requisite tests, and that Defendant Handley during the course of his employment used a racial epithet, calling Plaintiff a "fucking nigger" demonstrates more than a mere inference that race was the motivating factor in not hiring Plaintiff and strongly suggests that Handley did not hire Plaintiff because he is an African American.

10

## Count IV: Violation of Title VII
## (Retaliation)

63. Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

64. Plaintiff engaged in protected activity by lodging complaints against Defendant Handley and alleging that he was unjustly being denied hiring and alleging discriminatory animus and bias.

65. Plaintiff suffered a material adverse employment action by being denied hiring.

66. There is a causal connection between Plaintiff engaging in protected activity and Defendants' retaliatory actions of not hiring him.

67. Handley's and the BPD's conduct constitutes retaliation against Plaintiff because he engaged in activities protected by the FEPA.

68. Handley and the BPD have offered no reasons for not hiring Plaintiff, and racial bias and animus are apparent from Handley calling Plaintiff a "nigger" after belittling him and telling him he should apply for jobs in other jurisdictions, and otherwise telling him without explanation that he was not qualified for a job as a BPD police officer, even though Plaintiff had passed all required tests.

69. The actions complained of herein violated Plaintiff's right to be free of race discrimination, harassment, and retaliation under State law.

70. The racial discriminatory action detrimentally affected Plaintiff and would detrimentally affect a reasonable person of the same race in that position.

71. Defendants had actual and/or constructive knowledge about the racial discrimination and not only failed to take prompt and adequate remedial action, but instead,

11

<ins>participated in the racial discriminatory conduct against Plaintiff by continually refusing to hire him.</ins>

<del>54.</del><ins>72.</ins> <ins>As a direct and proximate result of this racial discrimination, disparate treatment, and retaliation for Plaintiff lodging complaints about discrimination from Handley and the BPD, Plaintiff has suffered injury to his reputation, injury to his career, pain, mental anguish, and humiliation, and faces irreparable harm and future and ongoing losses.</ins>

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendants:

a. Declaring that the acts and practices complained of herein are in violation of Maryland Fair Employment Practices Act <ins>and Title VII</ins>;

b. directing Defendant to pay Plaintiff both compensatory and punitive damages in an amount in excess of $75,000;

c. directing Defendant BPD to offer a job to Plaintiff as a BPD police officer commensurate with Plaintiff's experience and qualifications;

d. directing Defendants to pay the differential in Plaintiff's pay as a Baltimore City School police officer and what he would have made upon timely hiring as a BPD police officer;

e. awarding Plaintiff the costs of this action, including expert witness fees, if required, together with reasonable attorneys' fees as provided by the FEPA and other applicable statutes;

f. awarding Plaintiff backpay with interest, back pension and other benefits with interest, front pay, and compensatory damages, including damages for pain and suffering;

    g. granting a permanent injunction directing Defendant BPD to take all affirmative steps necessary to remedy the effects of the illegal discriminatory conduct as alleged herein and to enjoin similar conduct in the future;

    h. granting to Plaintiff prejudgment interest; and

    i. granting such other and further relief as this Court deems necessary and proper.

## PRAYER FOR JURY TRIAL

Plaintiff prays to have this case tried by a jury.

_____
Michael E. Glass, MBA, Esq.

Respectfully submitted,

_____
Michael E. Glass, MBA, Esq., ECF #910620098,
                              Federal Bar # 11805
201 N. Charles Street, Suite 1900
Baltimore, Maryland 21201
Phone: (410) 779-0600, Fax: 410-814-4604
Email: mglass@mglasslaw.com

*Attorneys for Plaintiff Martez Carter*