**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **MARTEZ CARTER** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.:  1:21-cv-02724-CCB |
| **BALTIMORE POLICE DEPARTMENT, et al.** | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BALTIMORE POLICE DEPARTMENT AND POLICE COMMISSIONER MICHAEL HARRISONS' MOTION TO DISMISS**</u>

Defendants Baltimore Police Department ("BPD") and Police Commissioner Michael Harrison ("Harrison") (collectively, "BPD Defendants"), by undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b), hereby submits this Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, and for reasons states as follows[1]:

## INTRODUCTION

Plaintiff, a disgruntled Baltimore City School Police Officer who has been rejected for employment with BPD several times, now seeks to have this Court intervene in his hiring process. Other than his own self-serving statements that he was "eminently qualified" for a position as a BPD police officer, he has not properly pleaded any cause of action.  His First-Amended

---

[1]  Defendant James Handley ("Handley") filed a Motion to Dismiss in this case.  BPD Defendants hereby adopt and incorporate, by reference, any arguments stated in Handley's Motion that are applicable to BPD Defendants, as if fully stated herein.

Complaint as is noteworthy for what it doesn't contain as for what it does.  Specifically, Plaintiff has no knowledge of who was allegedly hired in his place, nor does he plead any details about the BPD hiring process.  Instead, he points to one disputed incident – an incident which Plaintiff initially stated was witnessed by others and now conveniently strikes this language in an effort to generate a dispute of material fact – as *per se* evidence that he was discriminated against based on race.  Plaintiff's unsupported belief, standing alone, is insufficient to satisfy his pleading requirements.  Thus, his First-Amended Complaint should be dismissed, with prejudice and without leave to amend.

## **PROCEDURAL HISTORY**

On August 2, 2021, Plaintiff filed a Complaint against BPD, Harrison, and Major James Handley ("Handley") in the Circuit Court for Baltimore City.  ECF No. 1.  On August 20, 2021, Plaintiff filed a First-Amended Complaint in the Circuit Court for Baltimore City.  *Id.*  On October 22, 2021, Defendants removed this action to the United States District Court for the District of Maryland.  The First-Amended Complaint alleges the following: violations of the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T §§ 20–101 *et seq.* (Race-Based Discrimination) (Count I); Retaliation (Count II); and violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") (Race-Based Discrimination) (Count III); Retaliation (Count IV).

Plaintiff's claims are predicated upon an EEOC Charge of Discrimination that he allegedly filed on May 26, 2020.  *See* ECF No. 2, at ¶ 33.  Plaintiff states that he received his Right to Sue Letter on May 26, 2021, and that he then timely filed this action.  ECF No. 2, at ¶¶ 34-36.  He seeks compensatory damages, employment with BPD, attorneys' fees, costs, and injunctive relief.

ECF No. 2.  Since each count fails to state a claim upon which relief can be granted, Plaintiff's

First-Amended Complaint must be dismissed, with prejudice and without leave to amend.

**<u>STATEMENT OF FACTS</u>** [2]

Plaintiff claims that he was discriminated against based on his race and that he was

retaliated against for engaging in protected activity (Counts I-IV).  ECF No. 2.

Plaintiff, an African-American male, is a 12-year veteran police officer with the Baltimore

City School Police.  ECF No. 2, at ¶ 2.  Prior to the incident giving rise to this suit, Plaintiff applied

for and was denied three times for employment with BPD.  *Id.*, at ¶ 3.  Although he was initially

rejected for employment, Plaintiff was permitted to go through the process for a second time.  *Id.*,

at ¶ 9.  Although not proper, Plaintiff completed his physical agility test by himself.  *Id.*, at ¶¶ 10-

11.  Even though Plaintiff passed the preliminary stages of the hiring process (*i.e.*, he passed the

written test and physical agility test), he was not hired by BPD either of these times.  *Id.*, at ¶ 12.

In 2017, Plaintiff then applied to BPD for a third time.  *Id.*  Plaintiff was again rejected, and was

informed he could not apply again.  *Id.*, at ¶ 21.

Notwithstanding this, Plaintiff reapplied anyway.  In July 2019, Plaintiff took the written

and physical agility test.  *Id.*, at ¶ 23.  Following this, Plaintiff called Defendant Handley to discuss

the status of this, his fourth attempt to get hired by BPD.  *Id.*, at ¶¶ 26-28.  Although Plaintiff

believed he was qualified – despite being rejected three times over the last several years –

Defendant Handley "began telling Plaintiff why he believed Plaintiff was not qualified."  *Id.*, at ¶

28.  Toward the end of this conversation with Defendant Handley, which was conducted in the

presence of two other BPD Sergeants, Plaintiff claims that Defendant Handley called him a

---

[2]  Defendants recite the facts based on the allegations as pleaded in the First-Amended Complaint.
This recitation is not a concession or admission of any of the facts contained therein.

"fucking nigger" and hung up the phone. *Id.*, at ¶¶ 29-30. Plaintiff still has not been hired by BPD, despite his own unsubstantiated belief that he is qualified. *Id.*, at ¶ 31.

## **STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *See, e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Although courts must generally accept the allegations of a complaint as true, that principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief . . . ." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotations omitted).

In addition, a plaintiff fails to state a claim where the allegations on the face of the complaint show an affirmative defense would bar recovery. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (citing Fed. R. Civ. P. 8(c)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal

conclusions couched as factual allegations are insufficient, *Ashcroft*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In general, if materials "outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. Pro. 12(b).  "Rule 12(b) [, however,] does not impose on the district court 'an obligation to notify parties of the obvious.'"  *Carter v. Baltimore Cty., Maryland*, 39 F. App'x 930, 933 (4th Cir. 2002).  While this Court should focus its inquiry on the sufficiency of the facts set forth in the Complaint, "consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citations omitted).

## ARGUMENT

Plaintiff's First-Amended Complaint paints a very clear picture of what's happening here. Unable to get hired by BPD, Plaintiff has manufactured a controversy in an effort to get the Court to intervene.  By Plaintiff's own admission, he did not qualify for BPD employment at least three times prior to the application process giving rise to this case.  Although he believes he is "eminently qualified," he clearly is not.  Even during the 2019 application process at issue here, he admits that Defendant Handley took the time to explain precisely why he was not qualified for hire.  Rather than accept this, Plaintiff claims that he was discriminated against.  However, even if the incident at issue occurred exactly as Plaintiff alleges, he still has not properly demonstrated actionable

discrimination or retaliation.   For these reasons, the First-Amended Complaint should be dismissed, with prejudice and without leave to amend.

**I.      Plaintiff has not properly pleaded a Title VII failure to hire claim.**

Plaintiff summarily concludes that he was not hired because of his race.   However, more is required that merely Plaintiff's unsupported belief.   To establish a *prima facie* claim for discriminatory failure to hire, a plaintiff must show that: "(1) he belonged to a protected class; (2) he applied for, and was qualified for, a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after his rejection, the position remained open and the employer continued to seek similarly-qualified applicants, or filled the position with an applicant  outside the protected class." *Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 143–44 (D. Md. 2019).   Importantly, "to satisfy the fourth prong, [African-American plaintiff] need only show that the position was filled by a white applicant." *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994); *see also Sharpe v. Prince George's Cty. Gov't,* No. CV TDC-17-3799, 2021 WL 928177, at *11 (D. Md. Mar. 11, 2021) ("the fourth element is that the person actually selected for the position was from outside the protected class, or that there were other circumstances 'giving rise to an inference of unlawful discrimination.'").   Plaintiff cannot meet his burden, and has not established a *prima facie* case.

**A.      Plaintiff was not, and is not, qualified for employment with BPD.**

Plaintiff can only establish that he belonged to a protected class and that he applied for a position with BPD.   He has not, and cannot, plead any of the other elements of his claim.   For example, he has not shown that he was actually qualified for the position.   Instead, he has stated that his 12 years of experience as a Baltimore City School Police Officer *per se* qualifies him as a BPD Officer.   ECF No. 2, ¶¶ 2, 31.   The differences between being a Baltimore City School Police

Officer and a Baltimore Police Officer are vast.  For example, the Baltimore City School Police is comprised of approximately 117 Officers, patrolling approximately 80,000 students.  *See* Hannah Gaskill, "Lawmakers Push to Replace School Police with Counselors,"

https://www.marylandmatters.org/2021/02/03/lawmakers-push-to-replace-school-police-with-counselors/#:~:text=%E2%80%9CThere%20are%20approximately%20117%20school,city%20schools%2C%E2%80%9D%20she%20said. (last accessed January 6, 2022).  On the other hand, the Baltimore Police Department is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The department's jurisdiction covers Maryland's largest city, with a population of 614,000.  *See* https://www.baltimorepolice.org/about (last accessed January 6, 2022).  The mere fact that Plaintiff is employed as a law enforcement officer does not demonstrate that he is qualified to be a BPD Officer.

Further, the fact that Plaintiff proffers nothing more than his status as a Baltimore City School Police Officer as "evidence" that he should have been hired by BPD is telling.  Plaintiff's own opinions as to his qualifications are of no moment.  *See Wallace v. Bd. of Educ. of Baltimore Cty.*, No. CIV. CCB-04-1660, 2009 WL 321568, at *5 (D. Md. Feb. 2, 2009) (explaining that "the Fourth Circuit has made clear that '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'") (internal citations omitted).  Plaintiff believes that because he worked for a small law enforcement agency that he must then be "eminently qualified" to work for the 8th largest law enforcement agency in the country.  Taking this position to its illogical conclusion, Plaintiff would argue that he should automatically be hired by *any* law enforcement agency, simply by virtue of his current employment.  Plaintiff seems to believe that all police officers are interchangeable, and are automatically qualified for employment with any other law enforcement agency.  Regardless of what Plaintiff believes, his own self-determined

criteria for hire are immaterial. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) (stating that candidates for promotion must compete based on qualifications established by the employer, rather than their own criteria for judging their qualifications); *see also Fomengia v. Montgomery Cty. Dep't of Health & Hum. Servs.*, No. CV DKC 2003-2709, 2006 WL 8457025, at *6 (D. Md. Sept. 12, 2006) (finding that Plaintiff merely pointing to his own qualifications – offering no evidence to the qualifications of the four individuals hired instead of him, but submitting only his own resume – was "logically insufficient to establish that [Plaintiff] was more qualified than the applicants hired for the … position."); *Sewell v. Westat*, No. RWT 16-CV-0158, 2016 WL 6600533, at *3 (D. Md. Nov. 8, 2016), *aff'd*, 689 F. App'x 211 (4th Cir. 2017) (Plaintiff's conclusory statement that she was qualified for every position for which she applied, "devoid of further support, is insufficient to satisfy the second element and survive a Rule 12(b)(6) motion to dismiss.").

In this case, Plaintiff himself has actually shown the opposite.  He has demonstrated that he was not remotely qualified for employment with BPD.  As he explained, prior to 2017, he twice applied for and was denied employment with BPD. ECF No. 2, at ¶ 3.  In 2017, he went through the process again.  *Id.*, at ¶ 12.  He was denied this time as well.  *Id.*, at ¶ 21.  Thus, Plaintiff was denied three times prior to the 2019 application that gives rise to this suit.  Plaintiff is simply unqualified for employment with BPD, as evidenced by his repeated failures.  Undeterred, Plaintiff maintains that because he passed the physical agility test and written test, his hiring was a foregone conclusion.  *Id.*, at ¶ 23.  Plaintiff grossly misunderstand the application process, and omits several crucial steps in the hiring process.  As explained on BPD's website, the NTN Exam and Fitness Test are only the second and third steps in a seven-step process.  *See* https://www.baltimorepolice.org/careers/sworn-careers (last accessed January 6, 2022).  After

these examinations – which Plaintiff claims to have passed – an officer candidate is subject to a background investigation, polygraph test, medical exam, and psychological evaluation.  *Id.*  There are numerous reasons a candidate may be disqualified, notably including "integrity: Being truthful is utmost important; *telling a lie or altering the truth at any stage of the process will disqualify your current and **any future applications***."  *Id.*  (emphasis added).  By Plaintiff's own admission, he was sent a denial letter by then head of Recruitment Brian Hance in 2017, "banning" him from reapplying to BPD.  ECF No. 2, at ¶ 21.  Only one inescapable conclusion can be drawn from this: Plaintiff was found to have lied or altered the truth during the application process. Notwithstanding this, Plaintiff brazenly ignored this order and applied again in 2019.  Clearly, he was no more qualified in 2019 than he was in any of his previous three attempts.

As an aside, Plaintiff has also conveniently failed to include the racial makeup of the other individuals mentioned in his Complaint (*i.e.*, those who he said also rejected him).  Upon information and belief, every single decision maker involved in his hiring process is African-American, except Defendant Handley and former Commissioner Kevin Davis.  For example, Jack Young, Regina Richardson, Larry Armwood, Darryl DeSousa, Brian Hance, and Michael Harrison are all African-American.  The fact that the decision makers involved in Plaintiff's numerous applications were of the same protected class as Plaintiff "'weakens any possible inference of discrimination.'"  *James v. Verizon*, 792 F. Supp. 2d 861, 869–70 (D. Md. 2011) (internal citations omitted); *see also Ryan v. McAleenan*, No. CV ELH-19-1968, 2020 WL 1663172, at *19–20 (D. Md. Apr. 3, 2020) (Caucasian Plaintiff brought race-based claim against Defendant employer, but "the fact that [the decision maker] is Caucasian would render it unlikely that he was motivated by such animus.").  Plaintiff was allegedly "banned" from future application by Brian Hance, an African-American BPD Major.  To be sure, Plaintiff claims without support that

Defendant Handley was somehow behind this decision.  ECF No. 2, at ¶ 21.  Plaintiff's unsavory tactics on this point are clear; having failed numerous times to get hired by BPD, Plaintiff waited until he could pin his problems on Caucasian Defendant Handley.  Notably, Plaintiff brought no suit and filed no claims with respect to the countless prior times he was rejected.  Instead, he manufactured this case against Defendant Handley in an effort to hide the fact that he is woefully unqualified for a job with BPD.  *Moore v. Mukasey*, 305 F. App'x 111, 116–17 (4th Cir. 2008) ("our case law makes plain that [Plaintiff's] self-assessment of his superior aptitude for the position" is inadequate for establishing that they should be hired.).

> **B.    Plaintiff has not shown that the position he applied for remained open, nor has he shown that the position was filled with an applicant outside his protected class.**

Plaintiff's failure to satisfy the fourth element of a failure to hire claim can be easily disposed of, as he has made utterly no mention of what happened after he was rejected.  *See generally,* ECF No. 2.  Plaintiff has not pleaded anything related to the position, other than he feels he was entitled to it as a matter of right.  To create an inference of unlawful discrimination, Plaintiff "'must *at least* demonstrate that her 'rejection did *not* result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'"  *Simpson v. Techonology Serv. Corp.*, No. CIV.A. DKC 14-1968, 2015 WL 5255307, at *8 (D. Md. Sept. 8, 2015) (internal citations omitted).  As noted in the First-Amended Complaint, Plaintiff was in fact not qualified for the position he sought.  He was banned from re-applying after his third rejection 2017, but he applied again nonetheless.  Everything about the First-Amended Complaint points to the conclusion that Plaintiff has manufactured the incident giving rise to this lawsuit.

The burden to satisfy the fourth element of a *prima facie* failure to hire claim is not onerous.  That said, Plaintiff has not done it here.  *See Janey v. N. Hess Sons, Inc.*, 268 F. Supp. 2d 616, 625–26 (D. Md. 2003) ("the absence of evidence that the allegedly open position was filled by someone else, particularly someone outside Plaintiff's protected class, undermines Plaintiff's ability to fulfill the fourth element of the *prima facie* case.").  Plaintiff makes no mention of what happened to the position after he was rejected.  He is silent as to whether it was filled or remained open.  *See Rivera v. Howard Cty. Pub. Sch.*, No. CV BPG-19-3598, 2021 WL 2260376, at *4 (D. Md. June 3, 2021) ("with respect to the fourth element of plaintiff's age discrimination claim, plaintiff must allege facts showing that the position remained open or that defendant hired a person who was 'similarly qualified' and 'substantially younger' than plaintiff to fill the position….Here, plaintiff alleges that defendant hired younger candidates, but provides no further detail; therefore, the court cannot determine whether these candidates were 'similarly qualified' and/or 'substantially younger' than plaintiff.") (internal citations omitted).

Plaintiff has not, and cannot, satisfy the fourth element of his failure to hire claim.  He has not pleaded, with any particularity, about the position he applied for and what happened to it after he was rejected.  He does not identify the successful applicants for the position he sought, nor does he identify the race of any such applicant.  ECF No. 2.  Even if he *did* include this information in his First-Amended Complaint, an allegation that BPD hired people outside of Plaintiff's protected class "does not, without supporting specific facts" give rise to an inference of unlawful discrimination.  *Rivera*, 2021 WL 2260376, at *4; *see also Freeman v. Beverly*, No. PX-19-1784, 2020 WL 2747392, at *5 (D. Md. May 27, 2020) ("[S]imply because [plaintiff] is a member of a protected class and was not hired, alone, cannot sustain a discrimination claim."); *Pugh v. Bd. of Educ. of Montgomery Cnty.*, No. DKC-16-3816, 2017 WL 1344493, at *6 (D. Md. Apr. 12, 2017)

("Plaintiff makes broad, conclusory allegations that she was not hired because of her race, but she has alleged no facts in support of those conclusions.").

Ultimately, Plaintiff's entire failure to hire claim must fail as a matter of law.  He has pleaded nothing remotely close to actionable facts in support of his allegations.  He believes that simply because of his current job he is destined to be a BPD Officer, and that any reasons to the contrary must necessarily be discriminatory.  This of course ignores the fact that he was rejected multiple times prior to 2019.  He has put forth only "conclusory allegations" that BPD failed to hire him "for opportunities that []he [was qualified] for because []he is an African American []male."  But his own "'subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.'"  *Sewell v. Westat*, No. RWT 16-CV-0158, 2016 WL 6600533, at *3 (D. Md. Nov. 8, 2016), *aff'd*, 689 F. App'x 211 (4th Cir. 2017) (internal citations and quotations omitted).  In the end, his failure to hire based on race claim "is purely conclusory and contains no factual support that would allow it to survive a Rule 12(b)(6) motion to dismiss."  *Sewell*, 2016 WL 6600533, at *3.  Accordingly, his First-Amended Complaint must be dismissed, with prejudice and without leave to amend.

## II.     Plaintiff's Title VII retaliation claim fails *ab initio*.

Plaintiff's retaliation claims fair no better, and lack the basic fundamental predicate facts necessary to bring such a claim in the first place.  By including them at all, Plaintiff comes dangerously close to engaging in frivolous and vexatious litigation.  Plaintiff knows full well that he did not engage in *any* protected activity until long after the alleged August 2, 2019 incident at issue in this case.  As such, bringing this cause of action is improper and a waste of judicial resources.

To state a claim for retaliation, Plaintiff must allege that: (1) he engaged in a protected activity, such as filing a complaint with the EEOC; (2) that BPD acted adversely against him; and (3) the protected activity was causally connected to the adverse action. *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (citations omitted); *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). Notably, the Fourth Circuit has "consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021). Plaintiff makes clear that, in this case, he did not engage in any protected activity until almost eight (8) months after the alleged "n-word" incident. According to Plaintiff, this incident occurred on or about August 2, 2019. ECF No. 2, at ¶¶ 26-30. In contrast, Plaintiff filed his EEOC Charge on May 26, 2020. *Id.*, at ¶ 33. Obviously, Plaintiff cannot establish retaliation where the decision not to hire him was made before he filed his Charge of Discrimination. *Mackie v. Jewish Found. for Grp. Homes*, No. CIV.A. DKC 10-0952, 2011 WL 1770043, at *6 (D. Md. May 9, 2011) ("a plaintiff cannot establish [retaliation] where the termination decision is made *before* the decision-makers learn that their employee engaged in protected activity.").

The decision to not hire Plaintiff was not, and could not, be causally related to his EEOC Complaint. Nor could Defendant Handley's alleged use of the "n-word," if this indeed occurred at all. Plaintiff completely glosses over these important details in his First-Amended Complaint, and essentially argues that the failure to hire was, itself, retaliatory. Unfortunately, more is required of Plaintiff. He must demonstrate that the employer took the adverse employment action because he engaged in a protected activity. Since, by definition, "an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary" to establish his claim. *Dowe v. Total Action Against*

*Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).  By his own admission, no one could have had knowledge of his protected activity, for the simple fact that he had not engaged in any such activity until well after the alleged adverse employment action took place.  Thus, his retaliation claim fails, and must be dismissed with prejudice and without leave to amend.

III.    **Plaintiff's claims under the Maryland Fair Employment Practices Act are fatally flawed.**

Assuming for the sake of argument that Plaintiff's First-Amended Complaint is not dismissed for the reasons stated above, his claims under the Maryland Fair Employment Practices Act ("MFEPA") are deficient as a matter of law.  As an initial matter, there are no original or independent facts in the Amended Complaint that support this claim.  ECF No. 2.  Instead, Plaintiff recycles the same allegations used to buttress his Title VII causes of action.  *Id.*  For several reasons, these allegations fall short.

First, Plaintiff did not comply with the notice requirements of the Local Government Tort Claims Act, and does not include any indication to the contrary in his First-Amended Complaint. *See Martino v. Bell*, 40 F. Supp. 2d 719, 723–24 (D. Md. 1999) (noting that "the LGTCA applied to 'all torts without distinction, including intentional and constitutional torts'") (quoting *Thomas v. City of Annapolis*, 113 Md. App. 440 (1997).  Indeed, Plaintiff makes no mention of the LGTCA at all in his First-Amended Complaint, blowing right past this dispositive issue.  Clearly, he has neither complied with the notice provisions of the LGTCA, nor has he properly alleged compliance in his First-Amended Complaint.  *See Rounds v. Md.-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 643 (2015) ("nothing in the statute's language or its legislative history indicates that the General Assembly intended to exclude any category of tortious conduct committed by a local government or its employees, from the scope of the LGTCA notice requirement.").  Because the

LGTCA applies to Plaintiff's allegations that his state rights were violated, he is procedurally barred by his non-compliance with the notice requirements of the LGTCA.

Second, Defendant BPD is considered an arm of the State for the purpose of State law claims, and thus enjoys sovereign immunity. *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997) (sovereign immunity extends to "state agents and state instrumentalities."); *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 303, 323 (2001); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) ("The claims against the Baltimore Police Department based on state law will, therefore, be dismissed on sovereign immunity grounds."). As this Court is well aware, Maryland courts have uniformly and unequivocally held that BPD is entitled to common law state sovereign immunity and thus shielded from liability on state and common law claims. *See Grim v. Balt. Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *12 (D. Md. Nov. 8, 2019) ("State sovereign immunity bars an individual from maintaining a suit for money damages against the State of Maryland or one of its agencies for violations of State law."); *Corbitt v. Balt. City Police Dep't*, No. CV RDB-20-3431, 2021 WL 3510579, at *7 (D. Md. Aug. 10, 2021); *Nicholson v. Balt. Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *9 (D. Md. Apr. 20, 2021); *see also Cherkes*, 140 Md. App. at 313.

As § 20-903 of the State Government Article provides, "the State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title." MD. CODE ANN., STATE GOV'T § 20-903. However, § 20-1013(b) of the State Government Article restricts proper venue to "the circuit court for the county where the alleged unlawful employment practice occurred." MD. CODE ANN., STATE GOV'T § 20-1013(b). In *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019), the Court of Appeals for the Fourth Circuit held that "because the consent to suit provision does not specify

the State's intention to subject itself to suit in *federal court*, that provision cannot be read to waive the State's Eleventh Amendment immunity.  Moreover, neither the venue provision nor any other statute expressly indicates that the State's consent to suit extends to suit in federal court." (internal citations, quotations, and alterations omitted).  Thus, BPD enjoys immunity from Plaintiff's MFEPA claims.  As with his Title VII claims, these counts must also be dismissed, with prejudice and without leave to amend.

### IV.    Plaintiff's claims against Defendant Harrison are improper.

In addition to his claims against BPD, Plaintiff has brought individual Defendants into this case.  Quite simply, they have no place in this litigation and must be dismissed.  The "settled law of the Fourth Circuit, beginning with the case of *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994), has long rejected individual liability under ... federal EEO laws." *Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414, 419 (D. Md. 2014) (quoting *Moody v. Arc of Howard Cty., Inc.*, No. JKB–09–3228, 2011 WL 2671385, at *4 (D. Md. July 7, 2011).  As the Fourth Circuit has explained, employees and supervisors "are not liable in  their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178, 180 (4th Cir. 1998).  Nor can these Defendants be sued in their individual capacity under MFEPA.  *See Hayes v. Md. Transit Admin.*, No. CV RDB-18-0691, 2018 WL 5809681, at *9 (D. Md. Nov. 6, 2018), *aff'd sub nom. Hayes v. Gorman*, 748 F. App'x 519 (4th Cir. 2019) ("individual supervisors may not be held liable for violations under Title VII, the ADA, FMLA, or MFEPA.").  Thus, both Plaintiff's Title VII and MFEPA claims brought against these Defendants in their individual capacities are improper and should be dismissed.

In addition, these Defendants cannot be sued in their official capacity for any state law claims.  As employees of the BPD, and thus state actors, these Defendants enjoy sovereign

immunity for Maryland state law claims.  *See Ensor v. Jenkins*, No. CV ELH-20-1266, 2021 WL 1139760, at *25 (D. Md. Mar. 25, 2021) (concluding that state sovereign immunity barred claims against Defendant, who was a Sheriff and thus a Maryland state employee, in his official capacity). Nor should the Court permit Plaintiff's Title VII claims against these Defendants in their official capacity, because "the 'official capacity' to which [Plaintiff] refers is exactly the capacity that the *Lissau* court found insufficient to confer liability under Title VII."  *Huff v. Sw. Virginia Reg'l Jail Authority*, No. CIV.A. 1:08CV00041, 2009 WL 395392, at *6 (W.D. Va. Feb. 17, 2009), *report and recommendation adopted sub nom. Huff v. Sw. Virginia Reg'l Jail Auth.*, No. CIV. A. 1:08CV00041, 2009 WL 674388 (W.D. Va. Mar. 12, 2009).

## CONCLUSION

Plaintiff's First-Amended Complaint is deficient beyond repair.  He has not properly pleaded any cause of action at all, let alone Title VII and MFEPA claims.  He has only shown that he was unqualified for employment with BPD.  Rather than look within, Plaintiff lashes out by filing this suit.  Knowing he has no actionable claim, he conveniently finds and targets a Caucasian BPD employee to blame for his own shortcomings.  In the end, Plaintiff's First-Amended Complaint fails to meet basic pleadings requirements.  No amount of amendments to the pleadings can solve this problem.  Accordingly, the First-Amended Complaint must be dismissed, with prejudice and without leave to amend.

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss Plaintiff's First-Amended Complaint, with prejudice and without leave to further amend.

Respectfully submitted,


_____/s/_____
Justin S. Conroy (28480)
Deputy Chief Legal Counsel
Baltimore City Department of Law
Office of Legal Affairs
City Hall, Room 101
100 N. Holliday Street
Baltimore, MD 21202
410-396-2496 (telephone)
410-396-2126 (facsimile)
justin.conroy@baltimorecity.gov




**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of January, 2022 a copy of the foregoing Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, and Memorandum in Support were electronically filed in accordance with the Electronic Filing Requirements and Procedures as established by the U.S. District Court for the District of Maryland.



_____/s/_____
Justin S. Conroy (28480)