**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **MARTEZ CARTER** | * | |
| 5602 Benton Heights | | |
| Baltimore, MD  21206 | * | |
| | | |
|     Plaintiff, | * | |
| | | |
|     vs. | * | Case No.: 1:21-cv-02724-CCB |
| | | |
| **BALTIMORE CITY POLICE DEPARTMENT** | * | |
| 601 E. Fayette Street | | |
| Baltimore, MD  21202 | * | |
| | | |
|     <u>**Serve On**</u>: | * | |
|     James L. Shea, Esq. | | |
|     Baltimore City Solicitor | * | |
|     Office of the City Solicitor | | |
|     100 North Holiday Street | * | |
|     Suite 101, City Hall | | |
|     Baltimore, Maryland 21202 | * | |
| | | |
|     And | * | |
| | | |
| **MAJOR JAMES HANDLEY** | * | |
| 1730 Bollinger Road | | |
| Westminster, MD  21157 | * | |
| | | |
|     and | * | |
| | | |
| **MICHAEL HARRISON** | * | |
| in his official capacity as Commissioner | | |
| of the Baltimore Police Department | * | |
| 601 E. Fayette Street | | |
| Baltimore, Maryland 21202 | * | |
| | | |
|     Defendants. | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

## SECOND-AMENDED COMPLAINT AND PRAYER FOR JURY TRIAL

**NOW COMES** MARTEZ CARTER, Plaintiff (hereinafter "Mr. Carter" or "Plaintiff") and brings suit seeking redress against, for unlawful employment practices perpetrated by, Defendants MAJOR JAMES HANDLEY ("Handley"), COMMISIONER MICHAEL HARRISON, and the BALTIMORE CITY POLICE DEPARTMENT (herein "BPD"), (collectively "Defendants"), in violation of the Maryland Fair Employment Practices Act, MD Code Ann., State Gov't. §§ 20-601, *et seq.* and §§20-1001, *et seq.*,

Plaintiff incorporates the Complaints filed on August 2, 2021, and August 16, 2021, as if fully set forth herein such that this Amended Complaint relates back to the date the initial complaint was filed[1].

## PARTIES

1.   Plaintiff is an African American male citizen of the State of Maryland and the United States of America, and resident of Baltimore City.

2.   Defendant Major James Handley is a Caucasian Baltimore City Police Officer, a citizen of the State of Maryland, and of the United States of America.

3.   Defendant Major James Handley is employed by the Baltimore City Police Department as a Baltimore City Police Officer.

4.   Defendant Michael Harrison is employed by the Baltimore City Police Department as Baltimore City Police Department Commissioner.

---

[1] Plaintiff files this Second Amended Complaint in order to amend corrections from the Circuit Court for Baltimore City.

5.   Baltimore City Police Department is a local government entity located at 601 E. Fayette Street, Baltimore, Maryland 21202.

## FACTUAL ALLEGATIONS

6.   Plaintiff, a 12-year veteran police officer with Baltimore City School Police (BSP), was eagerly seeking the lateral position with Baltimore City Police Department (BPD) and was and is eminently qualified for a position as a police officer with the BPD.

7.   Plaintiff applied for and was denied the position twice. He then followed the chain of command trying to seek answers as to why he was denied.

8.   After the first time being denied he had to write a letter and explain why he wanted to reapply and ask for permission from Major James Handley to do so.

9.   Plaintiff knew Major Handley was in receipt since he hand-delivered it to Major Handley.  He did not receive a response.

10. Plaintiff then reached out to then City Councilman President Mr. Jack Young and explained to him the roadblocks he had been facing in transferring to the BPD.

11. Plaintiff then witnessed Jack Young call the Commissioner Kevin Davis on his cell phone.  Plaintiff was in ear shot and was advised to be quiet.

12. City Councilman President Jack Young asked Kevin Davis, why is there another qualified applicant in front of him trying to come over to the City police force and is being stopped by the same guy, "James Handley".

13. Approximately five minutes after that phone call between Jack Young and the Commissioner Plaintiff received a phone call from Major Handley G282 apologizing to Plaintiff saying somebody put his folder in the wrong pile, and asked when could Plaintiff come in and

take his physical agility test.  Major Handley then advised that he was in receipt of Plaintiff's letter, and that Plaintiff would be allowed to go through the process for the second time.

14. The following week, Plaintiff did his physical agility test by himself.  He completed his push-ups and sit ups in the weight room inside of the Central District and completed the 1.5 mile run around City Hall.

15. After Plaintiff successfully completed the test, Sergeant Richardson and Detective Larry Armwood asked who Plaintiff knew because nobody tests by themselves.  Plaintiff shrugged his shoulders and Detective Armwood said he thought that Plaintiff knew Jack Young. They laughed it off and that was the end of that conversation.

16.  Plaintiff did not hear back.  He then went through the process a third time. The two prior times Plaintiff successfully passed the preliminary stages of the hiring process. He passed the written test both times and then passed the physical agility test as well.

17.  Shortly thereafter he was scheduled for the polygraph test in May 2017 and passed it. He was advised the same day after successfully completing the polygraph test that he would receive a call to schedule his Psychological Examination. That day never came.

18.  Subsequently on June 29, 2017, at approximately 11:45am while he was in his annual In-Service Training classes that were being held at Poly High School, he received a phone call from Major Handley on his personal cell phone. Major Handley stated to him "This is Major James Handley from Recruitment.  You're a fucking liar."

19.  Plaintiff asked that Major Handley not insult him or belittle his character as he had never lied to him or anyone in the department during his recruitment process. In response, Major Handley stated, "Do you know who you're talking to?  I control the hiring process here."

20.   While Plaintiff was responding, the call dropped.  Plaintiff immediately called Major Handley on his cell phone to the number from which he had called.  Major Handley stated that he was glad Plaintiff called back because he thought he had hung up the phone on him, and that Major Handley was going to disqualify him that day.

21.   Upon information and belief, Major Handley did not have a valid reason to disqualify Plaintiff pursuant to the BPD policy.

22.   Plaintiff became very emotional and distraught because he believed at this time that Major Handley really had the power to hire or deny Plaintiff's hiring to the BPD.

23.   Plaintiff's hiring then went dormant for months.  He received information that his background investigator was being changes from Detective Larry Armwood to a new background investigator, Aileen Villodas.  He then received notification in November 2017 that he would not be moving forward in the process.  He received such information, not by a formal notification through the mail, but rather only after he called down to the recruitment office.

24.   On September 22, 2017, Plaintiff was entering ECU and ran into and spoke with Deputy Commissioner Darryl DeSousa.  Plaintiff advised him how that he felt that he was being mistreated and discriminated against, and that the BPD hiring practices seemed unfair based on Major Handley's conduct.  Deputy Commissioner DeSousa advised Plaintiff that he understood and believed Plaintiff since something very similar was going on with DeSousa's son's hiring process and that Major Handley was the person who denied him as well.

25.   Upon information and belief, Deputy Commissioner DeSousa's son is a person of color as well whose employment with the BPD was denied based on his race.

26.   When Plaintiff re-applied, he received another denial letter signed by Brian Hance that

he was banned for life from re-applying to the BPD, but that the decision was made by Major Handley.

27.   Upon information and belief, on or around September 2018, Major Handley was investigated by the Internal Affairs Ethics Unit. During their investigation, they discovered that Major Handley had inappropriate sexual relations with an applicant while he was the major of recruitment, misappropriated funds while attending a recruitment event in Puerto Rico, and that he had discriminatorily disqualified five (5) African Americans from the application process.

28.   Upon information and belief, Major Handley was then transferred out of the Recruitment Division following the investigation of the Internal Affairs Ethics Unit.

29.   Upon information and belief, in April 2019, Major Handley was not assigned to the recruitment division, but obtained Plaintiff's employment folder—a violation of BPD protocol.

30.   Deputy Commissioner Darryl DeSousa was promoted to Commissioner and Major Brian Hance who was Chief of Patrol was then in charge of Recruitment for a short tenure.

31.   Upon information and belief, on or around May 2019, Major Handley was reinstated as the Acting Major of Recruitment, despite the numerous complaints of misconduct against him.

32.   Upon information and belief, on or around July 2019, Major Handley was permanently reinstated to the Recruitment Section of the BPD.

33.   Plaintiff, therefore, was placed in a direct line of harm and retaliation at the hands of Major Handley during the hiring process.

34.   On July 25, 2019 Plaintiff took his written examination again and passed and the following week July 31, 2019.  Plaintiff successfully  completed his physical agility test. The

testers advised all applicants to call down to recruitment the following day and see who the applicants' background investigators would be because they would send the results the same day.

36. Plaintiff began calling recruitment on August 1, 2019, to ask who would be assigned as his background investigator. Plaintiff spoke with a detective on the phone and asked him did he know who had been assigned as Plaintiff's background investigator. Plaintiff was then advised that he would need to talk to Major James Handley.

36. Plaintiff called the following day to talk to Sergeant Regina Richardson so she could put Plaintiff in contact with Major James Handley. Sergeant Richardson was not available at the time but Plaintiff spoke with a Sergeant Grant who advised that Major Handley would not take the call and to try reach him on his cell phone because Handley did not have a phone in his office.

37. Plaintiff then called Major Handley on his cell phone several times with no answer. Plaintiff began trying to call him again on August 2, 2019, at 08:17 am. He called 3 times with no answer. Major Handley called back at 8:53 am spoke with Plaintiff for 37 minutes.

38. For 37 minutes Plaintiff tried to explain why he wanted to come to the department and why he would be a good fit, especially given his extensive experience as a Baltimore City School police officer. Major Handley, however, told Plaintiff that he should apply to other agencies in surrounding counties, leading Plaintiff to believe he was qualified to be an officer, but that Officer Handley did not want to work with him.

39. Plaintiff advised that he wanted to serve his community, the one he grew up in. Major Handley became irritated with Plaintiff and began telling Plaintiff why he believed

Plaintiff was not qualified for the job--none of which had merit--that Plaintiff was lucky to still have a job, and continued to belittle Plaintiff.

40.  Towards the middle of the conversation, Handley called in Sgt. Richardson and another male sergeant to listen to the remainder of the phone call. He had them introduce themselves, although Plaintiff could not hear the male sergeant's name.

41.  Plaintiff inquired why Handley did not have the other officers present from the beginning of the conversation. Major Handley proceeded to call Plaintiff a "fucking liar" and as he was getting off the phone he called Plaintiff a "fucking nigger" and hung up the phone.

42.  Upon information and belief, numerous witnesses were present when Major Handley called Plaintiff a "fucking nigger."

43.  Such witnesses include Officer Welai Grant, and upon information and belief, Ron Carter, and Dorian Smith.[2]

44.  Upon information and belief, Major Handley profiled both Ron Carter and Martez Carter by stating, "[that] thug [Contract Specialist Carter] outside the door knew Martez Carter because they look alike and share the same last name."

45.  To date, Plaintiff has been denied a position at the BPD.  Plaintiff has followed up on numerous occasions to check the status of his application and was advised that BPD Legal Affairs has his employment folder.  Plaintiff successfully passed all requirements for employment with BPD and is qualified to be a Police Officer vis-à-vis his experience as a BCS police officer.

---

[2] Officer Grant filed a lawsuit against the BPD and specifically discussed witnessing Defendant Handley using the "N" word when speaking with Plaintiff.  See *Welai Grant v. Baltimore City Police Dept.,* Case No. 1:21-cv-02173-RDB, Document 1, Grant Complaint, p.8, ¶ 29.

46.   Upon information and belief, BPD hired applicants outside of Plaintiff's protected class after he was wrongfully rejected because of Defendant Handley's blatant racism.

47.   At the time Plaintiff applied to the BPD and after he was wrongfully denied employment, the BPD had numerous vacancies that had not been filled. At present, there are about 400 positions that remain unfilled, representing a colossal 14% vacancy rate for police officers.

48.   Despite BPD hiring applicants outside of the protected class, BPD still has a 14% vacancy rates for officers.

49.   The staggering vacancy rate for BPD officers further signifies Defendant Handley's blatant racism towards Plaintiff and other African American applicants.

50.   Instead of focusing on protecting the public and ensuring a complete police force, Defendant Handley systematically rejected African American applicants, including Plaintiff, despite their qualifications and experience, thereby jeopardizing the safety of Baltimore City residents, citizens who work in Baltimore City, and visitors.

51.   It is patently clear that Major Handley has a racial bias and animus and has denied Plaintiff employment based on his race, as is evidenced by Major Handley's use of such egregious and offensive racial slur as well as denying employment to five other black applicants.

52.   Defendant BCPD is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

## ADMINISTRATIVE COMPLIANCE

53.   Plaintiff filed his EEOC charge on May 26, 2020, within 300 days of the discriminatory acts (Title VII), specifically, within 300 days of Major Handley calling him a "fucking nigger" and denying him employment based on his race.

54.   The EEOC issued a Right to Sue letter dated May 26, 2021, which was received on June 6, 2021.  (See **Exhibit 1**).

55.   More than 180 days has passed since Plaintiff filed her charge of discrimination.

56.   This suit is brought within 90 days of receipt of the Right to Sue Letter and within two years of the discriminatory acts complained of pursuant to the terms of the Maryland Fair Employment Practices Act (FEPA).

### **Count I: Violation of the Maryland Fair Employment Practices Act (FEPA)**
**(Race-Based Discrimination)**

57.   Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

58.   FEPA outlaws discrimination in employment based on race, color, religion, sex, age national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

59.   Under FEPA, an employer can be held legally responsible if the person responsible for the harassment and discrimination can make or recommend employment decisions (such as, hiring or firing), or directs, supervises, or evaluates the work activities of the employee. Additionally, an employer can be held liable if its own negligence leads to discrimination and enables discrimination to continue.

60.   Plaintiff was in a protected class (African American) based on his race.

61. Pursuant to Md Code. Crts & Jud. Proc. § 5-304(e), Defendants had actual and constructive notice of Plaintiff's claims including his injuries and damages upon receipt of the EEOC charge on May 26, 2020.

62. Pursuant to Md Code. Crts & Jud. Proc. § 5-304(d), Defendants cannot prove, nor have they even alleged, that their defense has been prejudiced by lack of required notice because they received actual notice when the EEOC charge was filed.

63. Plaintiff suffered discriminatory treatment and tactics at the hands of Defendant Handley from the beginning of his application process with the BPD in 2017 and continued after Plaintiff spoke to Defendant Handley's supervisor regarding such discriminatory treatment.

64. Defendant Handley has a history of discriminating against African Americans in his position as Major of Recruitment.

65. Defendant Handley refused to hire Plaintiff without any legitimate reason or justification and made his racial bias and animus known when he called Plaintiff a "fucking nigger" in a phone conversation on August 2, 2019.

66. In Defendant Handley's authoritative position, he continued his history of discrimination, which was evident when Plaintiff (and five other black applicants) was (were) denied a position(s) as a BPD officer after proving he (they) was (were) qualified to become a police officer.

67. The only logical conclusion as to Plaintiff's denial was based on his race, which was especially apparent after Defendant Handley called Plaintiff a "fucking nigger."

68.   Plaintiff had extensive experience as a Baltimore City School Police Officer and was qualified to be hired as a police officer with the BPD and also passed all required written, agility, and other tests and requirements.

69.   Defendant Handley's and the BPD's failure to hire Plaintiff constitutes discrimination based on race in violation of the FEPA.

70.   No reasons have ever been given to Plaintiff as to why he has not been hired by the BPD including but not limited to what qualifications he did not meet.  Indeed, Plaintiff passed all the tests and met all the requirements for hiring yet was not hired anyway.

71.   The racial discrimination is ongoing since, to this day, Plaintiff has been illegally denied employment at the BPD based on his race.

72.   Defendant BCPD is directly liable for the discriminatory acts or omissions of its agents,

servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

73.   That Plaintiff was not hired despite that he had extensive experience as a police officer with the Baltimore City School Police and passed all of the requisite tests, and that Defendant Handley during the course of his employment used a racial epithet, calling Plaintiff a "fucking nigger" demonstrates more than a mere inference that race was the motivating factor in not hiring Plaintiff was because he is an African American.

### <u>Count II: Violation of the Maryland Fair Employment Practices Act (FEPA)</u>
**(Retaliation)**

74.   Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

75.   Plaintiff engaged in protected activity by lodging complaints against Defendant Handley dating back to 2017, when he discussed the discriminatory practices with Deputy Commissioner Darryl DeSousa.

76.   Defendant Handley's discriminatory practices were already known to Deputy Commissioner Darryl DeSousa, as his son was experiencing the same tactics used by Defendant Handley to preclude his ability to become a BPD officer.

77.   Plaintiff further engaged in protected activity when he filed an EEOC charge against Defendant Handley and the BPD for allowing the continuous discriminatory nature to extend over a period of years, leading up to Defendant Handley calling Plaintiff a "fucking nigger" on August 2, 2019.

78.   It is clear that Plaintiff was denied employment based on his race, and was continually denied employment thereafter because he is African American and decided to speak to Defendant Handley's supervisors regarding such discriminatory actions.

79.   Defendant Handley has a history of discriminating against African American applicants and his discrimination continued with Plaintiff's applications, even though he was more than qualified to become a BPD police officer.

80.   Plaintiff had extensive experience as a Baltimore City School Police Officer and was qualified to be hired as a police officer with the BPD.

81.   Specifically, Plaintiff was trained in patrolling, responding to calls, investigating offenses, counseling students, and de-escalating conflicts. Such requirements are similar to Baltimore City Police Department requirements.

82. Plaintiff also satisfied the qualifications to apply to become a BPD officer, including being a U.S. citizen, possessing a valid driver's license, was more than 20.5 years old at the time of applying, possessed a high school diploma or GED, and is proficient in English.

83. Further, Plaintiff passed both the written examination as well as the physical agility test.

84. Plaintiff passed the second and third steps of the BPD qualification process, i.e., he passed the physical agility test and written examination. However, Plaintiff was never given the chance to pass the fourth step, the extensive background test, because Defendant Handley precluded him from getting further in the process before denying him based on his race.

85. Further, Plaintiff did not meet any of the factors on the disqualifier's list, so his application process should have been moved to phase four, however, Defendant Handley ensured that that never happened.

86. Plaintiff suffered a material adverse employment action by being denied hiring as a BPD officer.

87. There is a causal connection between Plaintiff engaging in protected activity, i.e, informing Defendant Handley's supervisors of such discrimination and filing an EEOC charge, and Defendants' retaliatory actions of not hiring him.

88. After Plaintiff spoke with Deputy Commissioner Darryl DeSousa, he was informed that he must speak to Defendant Handley regarding his employment with the BPD, as Defendant Handley was the Acting Major of Recruitment, despite the numerous complaints against him.

89. Defendant Handley's and the BPD's conduct constitutes retaliation against Plaintiff because he engaged in activities protected by the FEPA.

90.   Defendant Handley and the BPD have offered no reasons for not hiring Plaintiff, and racial bias and animus are apparent from Handley calling Plaintiff a "nigger" after belittling him and telling him he should apply for jobs in other jurisdictions, and otherwise telling him without explanation that he was not qualified for a job as a BPD police officer, even though Plaintiff had passed all required tests, and adivisng him that he was banned for life from reapplying.

91.   The actions complained of herein violated Plaintiff's right to be free of race discrimination, harassment, and retaliation under State (and Federal) law.

92.    The racial discriminatory action detrimentally affected Plaintiff and would detrimentally affect a reasonable person of the same race in that position.

93.   Defendants had actual and/or constructive knowledge about the racial discrimination and not only failed to take prompt and adequate remedial action, but instead, participated in the racial discriminatory conduct against Plaintiff by continually refusing to hire him.

94.   Defendants are directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

95.   As a direct and proximate result of this racial discrimination and disparate treatment, Plaintiff has suffered injury to his reputation, injury to his career, pain, mental anguish, and humiliation, and faces irreparable harm and future and ongoing losses.

### Count III: Violation of Title VII
**(Race-Based Discrimination)**

96.   Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

97.   Plaintiff was in a protected class (African American) based on his race.

98.  Plaintiff had extensive experience as a Baltimore City School Police Officer and was qualified to be hired as a police officer with the BPD.

99.  Specifically, Plaintiff was trained in patrolling, responding to calls, investigating

offenses, counseling students, and de-escalating conflicts. Such requirements are similar to Baltimore City Police Department requirements.

100. Plaintiff also satisfied the qualifications to become a BPD officer,

including being a U.S. citizen, possessing a valid driver's license, was older than 20.5 years old at the time of applying, possessed a high school diploma or GED, and is proficient in English.

101. Further, Plaintiff passed both the written examination as well as the physical agility test.

102. Plaintiff passed the second and third steps of the BPD qualification process, i.e., he passed the physical agility test and written examination. However, Plaintiff was never given the possibility of passing the fourth step, the extensive background test, because Defendant Handley precluded him from getting further in the process before denying him based on his race.

103. Despite his qualifications, Plaintiff was denied the chance to become a BPD police officer, solely on the basis of his race.

104. Further, Plaintiff did not have any of the factors on the disqualifier's list, so his application process should have been moved to phase four, however, Defendant Handley ensured that never happened.

105. Defendant Handley refused to hire Plaintiff without any legitimate reason or justification and made his racial bias and animus known when he called Plaintiff a "nigger" in a phone conversation on August 2, 2019.  Defendant Handley's use of such an egregious racial

slur while discussing Plaintiff's job application with Plaintiff gives rise to more than a mere inference and evidences that Handley's refusal to hire Plaintiff was with discriminatory intent and purpose.

106. Defendant Major Handley has a history of denying applicants based on race, that they were African-American applicants, as evidenced in the Internal Affairs Ethics Unit investigation.

107. Defendant Handley's and the BPD's failure to hire Plaintiff constitutes discrimination based on race in violation of the FEPA and Title VII, and Section 1981.

108. Defendants are directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment under the theory of *Respondeat Superior*.

109. No reasons have ever been given to Plaintiff as to why he has not been hired by the BPD.  Indeed, Plaintiff passed all the tests and met all the requirements for hiring yet was not hired anyway.

110. Upon information and belief, BPD hired applicants outside of Plaintiff's protected class after Plaintiff was rejected based on his race.

111. In addition to hiring applicants outside of the protected class, hundreds of positions (to which Plaintiff applied) remain unfilled, equaling a 14% vacancy rate currently.

112. Defendants' racism was so egregious and interwoven in the hiring process that they turned down a qualified, experienced applicant, even with the staggering vacancy rate of Baltimore City Police officers, jeopardizing the safety of Baltimore City residents, visitors, and citizens who work in Baltimore City.

113. The racial discrimination is ongoing since, to this day, Plaintiff has been illegally denied employment at the BPD based on his race, and after meeting and passing all other requirements, he was denied the opportunity to go through the fourth phase, the background check.

114. Plaintiff was not hired despite his extensive experience as a Baltimore City School Police Officer, considering the minimum requirements to become a Baltimore City Police Officer include, being a U.S Citizen, possessing a valid driver's license, is at least 20.5 years old, possesses a high school diploma or equivalent, completion of a comprehensive background check, has a good driving record, has no DUI infractions within the prior 24 months, being honorably discharged if having served in the U.S. military, has no felony convictions, is not currently on parole or probation, no misdemeanor charges expunged, no illegal use of controlled dangerous substances in the last 36 months, can pass a mental and physical examination, and being truthful throughout the hiring process. Plaintiff qualified and continues to qualify in all of these aspects.

115. Despite Plaintiff's qualifications, Defendant Handley allowed his personal, racist animus and hatred to preclude Plaintiff from becoming a BPD officer as evidence by him using an egregious racial epithet with numerous witnesses present.

116. Indeed, Defendant Handley's racial animus runs so deep, that he made no effort to hide it and brashly and boldly called Plaintiff a "fucking nigger" in front of numerous witnesses, including African American officers.

117. Defendant Handley, in using such an offensive racial epithet, demonstrated more than a mere inference that race was a motivating factor in denying Plaintiff the possibility of becoming a

BPD officer, particularly given Plaintiff's qualifications, passing all tests, and meeting all requirements. Indeed, it evidences that Defendant Handley did not hire Plaintiff because he was African American.

## Count IV: Violation of Title VII
### (Retaliation)

118. Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

119. Plaintiff engaged in protected activity by lodging complaints against Defendant Handley and alleging that he was unjustly being denied hiring and alleging discriminatory animus and bias.

120. Such complaints were evident when Plaintiff spoke with Deputy Commissioner Darryl DeSousa regarding the mistreatment Plaintiff was facing during the hiring process, at the hands of Defendant Handley.

121. After Plaintiff spoke to Deputy Commissioner Darryl DeSousa regarding the unjustified treatment toward Plaintiff, Plaintiff received a denial letter which also banned him from applying to become a BPD officer.

122. It is evident that Defendant Handley knew of Plaintiff speaking with Deputy Commissioner DeSousa since Handley called Plaintiff shortly thereafter and called him a "fucking liar" in response and in reaction to Plaintiff speaking with DeSousa, and then on August 1, 2019 called him a "fucking nigger."

123. Plaintiff, distraught and upset regarding Defendant Handley's racial epithet towards him, filed a complaint with the EEOC after being informed that was the proper mechanism to pursue a claim.

124. Plaintiff suffered a material adverse employment action by being denied a position as a BPD officer based on Defendant Handley's hostility towards African Americans as well as in retaliation for Plaintiff engaging in protected activity by complaining to Deputy Commissioner DeSousa.

125. There is a causal connection between Plaintiff engaging in protected activity and Defendants' retaliatory actions of not hiring him.

126. Such retaliation was evident when Plaintiff received a denial letter, banning him from applying to the BPD, after speaking to Defendant Handley's supervisor, as well as when Defendant Handley called Plaintiff a "fucking liar" right after Plaintiff spoke with Deputy Commissioner DeSousa, and then called him a "fucking nigger" on August 1, 2019.

127. Defendant Handley's and the BPD's conduct constitutes retaliation against Plaintiff because he engaged in activities protected by the FEPA and Title VII.

128. Defendant Handley and the BPD have offered no reasons for not hiring Plaintiff, and racial bias and animus are apparent from Handley calling Plaintiff a "liar" and a "nigger" after belittling him and telling him he should apply for jobs in other jurisdictions, and otherwise telling him without explanation that he was not qualified for a job as a BPD police officer, even though Plaintiff had passed all required tests.

129. Indeed, Defendant Handley informed Plaintiff to apply to other jurisdictions to Become a police officer, leading one to believe that Plaintiff was in fact qualified to be a police officer, but Defendant Handley did not want him to work at the BPD based on his race.

130. Defendant Handley and the BPD failed to hire Plaintiff, an over-qualified individual, even though there is a current vacancy rate of 14% for Baltimore City Police officers.

131. Instead of allowing a qualified and experienced individual such as Plaintiff to complete the application process, Defendant Handley allowed his blatant racism to prevent Plaintiff from doing so.

132. Defendant Handley's continued racism is not only affecting African American applicants, but is also affecting public safety. Rather than allow qualified individuals, such as Plaintiff, to become BPD officers, Defendant Handley systematically rejects such applicants that could further protect the public and subdue crime.

133. The actions complained of herein violated Plaintiff's right to be free of race discrimination, harassment, and retaliation under State law and Federal law.

134. The racial discriminatory action detrimentally affected Plaintiff and would detrimentally affect a reasonable person of the same race in that position.

135. Defendants had actual and/or constructive knowledge about the racial discrimination and not only failed to take prompt and adequate remedial action, but instead, participated in the racial discriminatory conduct against Plaintiff by continually refusing to hire him, failing to complete the hiring process after Plaintiff engaged in protected activity, and after the BPD knew of Handley's racially discriminatory conduct against Plaintiff.

136. Defendants BPD is directly liable for the discriminatory acts or omissions of its employees while acting within the scope of their employment, under the theory of *Respondeat Superior*.

137. As a direct and proximate result of this racial discrimination, disparate treatment, and retaliation for Plaintiff lodging complaints about discrimination from Handley and the BPD, Plaintiff has suffered injury to his reputation, injury to his career, pain, mental anguish, and humiliation, and faces irreparable harm and future and ongoing losses.

## Count V: Violation of Section 1981
### (Discrimination and Retaliation)

138. Plaintiff incorporates the preceding and subsequent paragraphs as if fully set forth herein.

139. Plaintiff was in a protected class (African American) based on race.

140. Because of his race (African American), Plaintiff was subjected to unlawful conduct and adverse actions alleged throughout this Amended Complaint under Section 1981.

141. Defendants' unlawful adverse actions materially affected the terms, privileges, and ability to be employed by the BPD as a police officer.

142. Defendant knew that Plaintiff is an African American prior to the adverse actions, specifically when Defendant Handley called Plaintiff a "fucking nigger," because Defendant Handley obtained and possessed Plaintiff's employment file throughout his hiring process.

143. Defendants were aware of the discrimination Plaintiff was subjected to because of his race. Indeed, Defendants were on notice of the discriminatory treatment after Plaintiff complained to Deputy Commissioner DeSousa and is evident from the Internal Affairs Ethics

Unit investigation instigated against Defendant Handley due to his discriminatory practices against other officers and applicants.

144. Plaintiff was treated differently and subjected to different terms and conditions during his hiring process due to his race (African American).

145. Defendant has segregated and classified Plaintiff in a way that deprived him of his ability to be employed by the BPD and adversely affected his status as a potential employee because of his race (African American).

146. Other potential hires who were similarly situated to Plaintiff, but members of a different class than Plaintiff, were treated more favorably than Plaintiff and were not subject to Defendant Handley calling them a "fucking nigger."

147. Plaintiff's race was clearly a determining factor in Defendants' decision to deny Plaintiff a position as a BPD officer.

148. Defendants cannot offer any legitimate reason for their discriminatory and unlawful conduct.

149. Defendant Handley's discriminatory and unlawful conduct is a continuous problem that has been overlooked by his supervisors, and the BPD has failed to take corrective measures to allow Plaintiff (and other African American applicants) to complete the hiring process.

150. Defendants' conduct, specifically Defendant Handley's racial epithets towards Plaintiff, was intentional, deliberate, willful, malicious, reckless, continuous, and in callous disregard of the rights of Plaintiff because of his race (African American), and evidences the racial animus that was the real reason that Plaintiff was not hired by Defendant BPD.

151. Defendants further retaliated against Plaintiff y denying him being hired after Plaintiff complained of discriminatory treatment to Deputy Commissioner DeSousa of discriminatory treatment, at which point Deputy Commissioner DeSousa stated that his son was being subjected to similar treatment.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendants:

a.  Declaring that the acts and practices complained of herein are in violation of Maryland Fair Employment Practices Act, and Title VII, and Section 1981.

b.  directing Defendant to pay Plaintiff both compensatory and punitive damages in an amount in excess of $75,000;

c.  directing Defendant BPD to offer a job to Plaintiff as a BPD police officer commensurate with Plaintiff's experience and qualifications;

d.  directing Defendants to pay the differential in Plaintiff's pay as a Baltimore City School police officer and what he would have made upon timely hiring as a BPD police officer;

e.  awarding Plaintiff the costs of this action, including expert witness fees, if required, together with reasonable attorneys' fees as provided by the FEPA, Title VII, Section 1981, and other applicable State and Federal statutes;

f.  awarding Plaintiff backpay with interest, back pension and other benefits with interest, front pay, and compensatory damages, including damages for mental pain and suffering;

g.  granting a permanent injunction directing Defendant BPD to take all affirmative steps necessary to remedy the effects of the illegal discriminatory conduct as alleged herein and to enjoin similar conduct in the future;

h.   granting to Plaintiff prejudgment interest; and

i.   granting such other and further relief as this Court deems necessary and proper.

## **PRAYER FOR JURY TRIAL**

Plaintiff prays to have this case tried by a jury.

_____
Michael E. Glass, MBA, Esq.


Respectfully submitted,

_____
Michael E. Glass, MBA, Esq., ECF #910620098,
                                Federal Bar # 11805
201 N. Charles Street, Suite 1900
Baltimore, Maryland 21201
Phone: (410) 779-0600, Fax: 410-814-4604
Email: mglass@mglasslaw.com

*Attorneys for Plaintiff Martez Carter*