## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARTEZ CARTER,

    Plaintiff,

v.

                          Civil No. 21-2724-BAH

BALTIMORE POLICE DEPARTMENT,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### **MEMORANDUM OPINION**

Martez Carter ("Plaintiff" or "Carter") brought suit against the Baltimore Police Department ("Defendant" or "BPD") alleging violations of the Maryland Fair Employment Practices Act ("MFEPA"), Title VII, and Section 1981. ECF 16 (amended complaint). Pending before the Court is Defendant's Motion for Summary Judgment (the "Motion"). ECF 66. The Court sent Plaintiff a Rule 12/56 notice indicating the time frame for Plaintiff to file his opposition to the Motion, but Plaintiff failed to respond and the time to do so has expired. ECF 90. The Motion is therefore unopposed. The Motion includes a memorandum of law and exhibits.[1] Defendant filed a motion to seal numerous exhibits attached to the Motion. *See* ECFs 67–89. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion, ECF 66, is **GRANTED**. In addition, for the reasons stated below, the pending motion to seal, ECF 89, is **GRANTED**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    **BACKGROUND**

Plaintiff is an African American male who is currently employed as a school police officer with the Baltimore City School Police ("BCSP"). ECF 16, at 2 ¶ 1; ECF 66-3 (Carter Dep.), at 2:3–4. Plaintiff has applied for employment with BPD several times over the past ten years. Specifically, he previously applied for employment in November 2015, *id.* at 5:5–7, and sometime in 2016 or 2017, *id.* at 8:17–19. Plaintiff was not hired after either application due to numerous alleged performance issues, including issues bearing on his integrity. *See* ECF 70 (Corriveau 2016 preliminary close-out letter), at 1; ECF 72 (Villodas 2017 preliminary close-out letter[2]), at 1, 10. On August 18, 2018, Major Brian Hance wrote Plaintiff a letter stating that he was permanently disqualified from employment with BPD. ECF 76 (Letter from Hance), at 1. Despite this disqualification, Plaintiff submitted another employment application to BPD on or around May 24, 2019. ECF 77 (applicant database), at 1. On August 2, 2019, Plaintiff alleges that he spoke with James Handley, then Major of BPD recruitment, ECF 70, at 1, on the phone regarding his application, and during that conversation, Plaintiff claims that Handley used a racial slur. ECF 79 (Handley PIB investigative summary), at 1. Detective Rodney Davis was then assigned as the background investigator for Plaintiff's employment application. ECF 83 (Davis's memorandum to Jones), at 1. Davis conducted a background investigation and, on October 8, 2019, recommended that Plaintiff be disqualified from employment. *Id.* at 12. In recommending disqualification, Davis referenced, *inter alia*, the 2017 investigation, Plaintiff's disciplinary history, including allegations of excessive force and domestic violence, and the denial of his employment applications at the Anne Arundel County Police Department and Annapolis Police

---

[2] Defendant's exhibits are labeled "preliminary close-out" or "close out" letters. *See* ECF 66-2, at 1 (Exhibit List). As the name suggests, these types of correspondence summarize the findings of an investigation and provide the author's recommendation as to any appropriate next step.

Department, which were also based on Plaintiff's alleged integrity issues. *Id.* at 10–12; *see also* ECF 84 (report from Annapolis Police Department), at 1–2.

After Plaintiff learned that his 2019 employment application was denied, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), alleging that he was discriminated against on the basis of his race and suffered retaliation as a result of engaging in protected activity. ECF 25-5 (May 26, 2020 Charge), at 2; ECF 66-28 (September 29, 2020 Charge), at 1. The EEOC dismissed Plaintiff's charge and issued Plaintiff a Notice of Right to Sue on May 26, 2021. ECF 66-29 (Right to Sue letter), at 1.

On August 20, 2021, Plaintiff filed the instant lawsuit against BPD, former Major Handley, and former Police Commissioner Michael Harrison under Title VII, Section 1981, and related state law. *See* ECF 1-1, at 3. Defendants filed a motion to dismiss, which Judge Rubin granted as to Handley and Harrison, but denied as to BPD. ECF 30 (memorandum opinion). Discovery closed on June 25, 2024. ECF 61. Plaintiff has not taken any depositions and as noted, failed to respond to the instant Motion despite ample opportunity to do so. ECF 66-1, at 9.

### A.    The Uncontested Facts Presented in the Motion are Deemed Undisputed.

Plaintiff failed to oppose the following assertions—supported by various exhibits attached to the Motion—thus the Court deems the below facts undisputed for purposes of analyzing the Motion. *See* Fed. R. Civ. P. 56(e).

Plaintiff has applied to BPD three times. ECF 66-3, at 4:18. He first applied in November 2015 and was not hired. *Id.* at 6–7:17–4. This application with BPD was closed on August 6, 2016, by background investigator Michelle Corriveau. ECF 70, at 1. In the close-out letter, Corriveau stated that Plaintiff was under investigation by the BCSP Internal Investigation Division for possession and operation of a vehicle with fraudulent tags. *Id.* Plaintiff's police powers were

suspended at that time, pending the outcome of the investigation. *Id.* Internal affairs records also showed that in 2014, Plaintiff was investigated for time theft because he was allegedly at a casino while he was supposed to be working. ECF 68 (BCSP Internal Affairs Record), at 1. The close-out letter indicated that on May 26, 2016, the BCSP criminally charged Plaintiff with two counts of misconduct in office/theft less than $100.00.[3] ECF 70, at 1. Based on these findings, the processing of Plaintiff's BPD application was discontinued. *Id.*

Plaintiff then applied to BPD again in 2016 or 2017. ECF 66-3, at 8:17–19. Detective Aileen Villodas, a subordinate to Handley, was assigned to the background investigation, which included a review of Plaintiff's employment history, and criminal, civil, and traffic background and history. ECF 66-9 (Villodas Decl.), at 1. Villodas noted that Plaintiff answered "no" when asked whether he had ever been alleged to have commit excessive force despite the fact that he had been investigated for excessive force in 2012. ECF 72, at 1. Villodas also noted that Plaintiff was served with a criminal summons for domestic violence.[4] *Id.* at 1–2. With respect to the time theft incident at the casino, Villodas noted that Plaintiff was administratively and criminally charged, but Plaintiff failed to disclose this on his application questionnaire. *Id.* at 8. Other issues noted by Villodas included several license suspension warnings, non-compliance with child-support payments, and failure to pay state taxes, all of which Plaintiff also failed to disclose on his application. *Id.* at 8–10. As a result of her investigation, Villodas recommended Plaintiff's disqualification from employment by BPD. *Id.* at 10. Villodas affirmed that Handley did not

---

[3] The criminal charges were ultimately dismissed. ECF 69 (e-mail from BCSP to Villodas), at 1. On February 17, 2017, Plaintiff accepted punishment for the time theft incident, in lieu of termination from the BCSP. ECF 71 (acceptance of discipline letter), at 2. As punishment, Plaintiff was suspended from duty without pay for 10 days. *Id.*

[4] That case was eventually dismissed. ECF 72, at 1.

request that Villodas recommend Plaintiff's disqualification from employment and further asserts in her declaration that she did not factor Plaintiff's race into her recommendation. ECF 66-9, at 2 ¶¶ 8, 9. On November 21, 2017, Handley approved Villodas's recommendation and informed his command by e-mail that "[b]ased upon [Carter's] IAD history with the School Police and his acceptance of 10 days suspension from duty without pay, in lieu of termination, he has been disqualified for consideration for hire." ECF 73 (2017 Handley e-mail), at 1. Accordingly, Plaintiff was not hired by BPD. ECF 72, at 10. On November 22, 2017, Handley sent Plaintiff a rejection letter. ECF 74 (rejection letter from Handley), at 1.

On August 2, 2018, upon request from then-Baltimore City Council President Jack Young, Hance and Colonel Perry Standfield reviewed Plaintiff's employment application processes. ECF 75 (e-mails between Hance, Standfield, and Young), at 1. Hance indicated in a responsive e-mail that Plaintiff was "[d]isqualified for integrity" and "[s]chool [p]olice [i]nternal affairs records also include[] integrity issues." *Id.* On August 8, 2018, Hance wrote Plaintiff a letter stating that he was permanently disqualified from employment with BPD. ECF 76, at 1.

Despite notification that he was permanently disqualified, on or about May 24, 2019, Plaintiff submitted yet another employment application to BPD. ECF 77 (applicant database), at 1. On July 2, 2019, Plaintiff sent an e-mail again requesting the "opportunity to lateral and [] finish [his] career with BPD." ECF 78 (e-mail from Carter to Eric Melancon), at 1. On August 2, 2019, Plaintiff alleges that he and Handley spoke on the phone regarding his employment application, during which conversation Handley used a racial slur against Plaintiff. ECF 79, at 1. Specifically, Plaintiff alleges that Handley stated "[f]ucking [n-word] and fucking liar." *Id.* Plaintiff reported this to BPD's Public Integrity Bureau ("PIB"). *Id.* Both Handley and Sergeant George Giannakoulias, who was present for the August 2, 2019, phone call, recused themselves from

5

participating in the review of Plaintiff's 2019 employment application.  ECF 80 (Handley recusal letter), at 1–2; ECF 81 (Giannakoulias recusal letter), at 1.

According to Defendant, "[a]lthough two individuals outside of [] Handley's office said that they heard him use the slur, the two individuals who were inside his office while he was on the phone with Carter vehemently denied that he said it." ECF 66-1, at 6 (citing ECF 79, at 1–3).[5] PIB sustained the charges against Handley.[6]  ECF 79, at 4.  Consistent with its obligation to interpret evidence in the light most favorable to Plaintiff, the Court will assume that Handley did use the offensive racial slur during the August 2, 2019, phone call.

On August 14, 2019, Davis was assigned as Plaintiff's background investigator and was tasked with reviewing his latest application.  ECF 83, at 1.  Davis conducted a background investigation and, on October 8, 2019, recommended in a memorandum to Major Christophe Jones that Plaintiff be disqualified from employment by BPD. *Id.*  Davis referenced Villodas's 2017 investigation, including Plaintiff's BCSP disciplinary history described therein. *Id.*  Davis also uncovered new BCSP disciplinary incidents, including Plaintiff's failure to obtain an approved Secondary Employment form and failure to provide his gun permit status. *Id.* at 8. . Plaintiff accepted summary punishment and "[did] not dispute the facts constituting this violation." *Id.* at 8–9.  Davis also noted that Plaintiff failed to register with the Selective Service as required by law. *Id.* at 9.

---

[5] The confidential results of the investigation into the alleged phone call incident reflect that one BPD Sergeant said they heard Handley use the slur "either during or shortly after the call." ECF 79, at 2.  The report also reflects that an investigator was "able to locate a member of the Recruitment Section who also witness[ed] [] Handley make the derogatory comment." *Id.* at 3. Several BPD officers said they did not hear the slur uttered at any time. *Id.*

[6] Handley subsequently filed a lawsuit against BPD challenging PIB's finding in support of the charges. *Handley v. Balt. Police Dep't*, Civ. No. JRR-20-1054, 2022 WL 3700871, at *1 (D. Md. Aug. 26, 2022).  The docket in that matter reflects that the case settled and was dismissed on January 30, 2023. *See* ECF 39 in JRR-20-1054 (Rule 111 Order).

As part of his investigation of Plaintiff, Davis reviewed Plaintiff's prior application for employment with the Anne Arundel County Police Department, which indicated that Plaintiff was disqualified from that job due to "[m]ultiple infractions with the Baltimore School Police Department[] Internal Affairs Division," and failing to disclose during the application process infractions that were not sustained, including excessive force on a student and parent and domestic violence. *Id.* at 10. The Anne Arundel County applicant file also indicated that Plaintiff received 15 allegations which were sustained. *Id.* Davis was also in receipt of a report from the Annapolis Police Department regarding Plaintiff's employment application with that agency, which revealed that Plaintiff failed the polygraph examination and had theft investigations and an alleged neglect of duty accusation on his record. *Id.* at 11. The Annapolis Police Department concluded that Plaintiff "should no longer be considered for hire . . . based on his lack of integrity." ECF 84, at 1–2.

Davis submitted a report "for preliminary disqualification review" based on "applicant Carter's [i]ntegrity, [d]omestic [h]istory and [p]oor [j]udgment as a Law Enforcement Officer." ECF 83, at 12. Jones approved Davis's recommendation on November 21, 2019. *Id.* at 13. On the same day, Jones drafted a memorandum to Deputy Commissioner James Gillis (his command) stating:

> I am permanently disqualifying Mr. Carter for hire with the Baltimore Police Department as a law enforcement officer. Another background investigation was conducted despite Mr. Carter having been previously permanently disqualified in the past.

> Martez Carter is permanently disqualified based on his overall background profile as a law enforcement officer.

ECF 86 (permanent disqualification memo), at 1. Jones is an African American male. ECF 66-25 (Jones Decl.), at 1 ¶ 2. Jones affirmed that he did not discuss Plaintiff's application with Handley at any time during the employment application process. *Id.* at 2 ¶ 10. Jones also affirmed

that he did not disqualify Plaintiff because he is African American or because Plaintiff filed any complaints against Handley. *Id.* ¶ 11. On November 27, 2019, Detective Sergeant Kevin Brown sent an e-mail to Jones reiterating the reasons for Plaintiff's permanent disqualification, including "[m]ultiple traffic violations, multiple policy violations with his current employer [BCSP], domestic violence issues, Maryland State tax delinquency, and integrity issues related to disclosures during the [] hiring process." ECF 87 (e-mail from Brown to Jones), at 1.

In addition, the Recruitment Section's Standard Operating Procedure ("SOP") Manual required that Plaintiff be disqualified from employment with BPD. *See generally* ECF 88 (2018 Recruitment Section Standard Operating Procedure Manual). Under the "initial disqualifications" section, the Manual states under the "integrity" subsection that, "Omissions / Minimizations / Falsifications at any stage of the process will disqualify your current and any future applications." *Id.* at 27. Furthermore, under the "other disqualifications" section, integrity ("[t]elling a lie at any stage of the process"), domestic violence, failure to register with the Selective Service, and back-taxes/child support are each listed as reasons for disqualification. *Id.* at 29.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir.

2020)). The Court may rely only on facts supported by the record, not simply assertions raised in the pleadings. *Bouchat*, 346 F.3d at 522.

"Where, as here, the nonmoving party fails to respond, the court may not automatically grant the requested relief." *U.S. ex rel. James Commc'n, Inc. v. LACO Elec., Inc.*, No. DKC 14-0946, 2015 WL 1460131, at *2 (D. Md. Mar. 27, 2015) (citing Fed. R. Civ. P. 56(e)(2)). Rather, the Court must "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Moreover, Federal Rule of Civil Procedure 56(e) states:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order.

"In the specific context of summary judgment, '[t]he non-movant's failure to respond does not permit the Court to enter a "default" summary judgment, but the Court is allowed to accept the evidence presented by the movant as undisputed.'" *nTech Sols., Inc. v. Meta Dimensions, Inc.*, No. 21-cv-00673-JMC, 2023 WL 5671619, at *4 (D. Md. Sept. 1, 2023) (quoting *McIver v. United States*, 650 F. Supp. 2d 587, 590 (N.D. Tex. 2009)).

## III.  ANALYSIS

In his amended complaint, Plaintiff alleges: (1) violation of the Maryland Fair Employment Practices Act (race-based discrimination and retaliation), ECF 16, at 10, 12, (2) violation of Title VII (race-based discrimination and retaliation), *id.* at 15, 19, and (3) violation of Section 1981 (discrimination and retaliation). *Id.* at 22. Defendant contends that there is no genuine dispute between the parties as to any facts that are material to the resolution of Defendant's Motion. ECF

66, at 1. According to Defendant, Plaintiff has failed to establish a prima facie case for racial discrimination under Title VII, and even if Plaintiff were able to establish a prima facie case for racial discrimination, BPD has provided unrebutted legitimate business reasons for not hiring Plaintiff. *Id.* Defendant also avers that Plaintiff is unable to establish a prima facie case of retaliation under Title VII, and Plaintiff's state law claims under the Maryland Fair Employment Practices Act ("MFEPA") fail for the same reason his federal claims fail. *Id.* Plaintiff failed to respond to the Motion. The Court will first analyze Defendant's pending motion to seal and then turn to the summary judgment motion.

### A.    Defendant's Motion to Seal is Granted.

Defendant moved to seal select exhibits attached to its memorandum in support of its motion for summary judgment, pursuant to the stipulated protective order, ECF 45, in order to protect confidential disciplinary history and employment records. ECF 89-1, at 2. Local Rule 105.11, which governs the sealing of documents filed in the record, states in relevant part: "Any motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11 (D. Md. 2023). Defendant asserts that "[t]he proposed exhibits contain disciplinary records, personnel records, and information derived therefrom pertaining to Plaintiff, Martez Carter and another individual not a party to the present suit." ECF 89-1, at 1. Because the attached records include personnel records, the Court will grant the Motion to Seal. *See Rainey v. Yellen*, Civ. No. TDC-22-0134, 2023 WL 5054831, at *4 (D. Md. Aug. 8, 2023) (granting motion

to seal in employment discrimination case because the attached records included personnel records).[7]

**B.    Defendant is Entitled to Summary Judgment on the Discrimination Claims.**

Defendant argues that summary judgment is appropriate for the following reasons: (1) Plaintiff fails to establish direct evidence of discrimination, ECF 66-1, at 14; (2) Plaintiff also fails to establish a prima facie case of race discrimination, *id.* at 15; and (3) even if Plaintiff can establish a prima facie case of race discrimination, BPD produced evidence of its legitimate and nondiscriminatory reasons to disqualify Plaintiff, and Plaintiff has produced no evidence of pretext. *Id.* at 16. The Court will address Plaintiff's Title VII and Section 1981 claims in tandem, given that the race-based discrimination claims under these statutes are analyzed under the same framework. *See Proa v. NRT Mid Atlantic, Inc.,* 618 F. Supp. 2d 447, 461 (D. Md. 2009) ("Although Title VII and § 1981 claims rest on distinct legal theories, ordinarily, courts apply the same analyses, including the now traditional four-pronged prima facie case, burden-shifting regime of *McDonnell Douglas* . . . to employment-based claims under both theories."); *Bryant v. Bell Atl. Maryland, Inc.,* 288 F.3d 124, 133 (4th Cir. 2002) (extending Title VII requirements to § 1981 discrimination claim).

**1.    The lawsuit is not time-barred.**

As a threshold matter, Defendant maintains that the instant lawsuit is time-barred due to Plaintiff's failure to timely file an EEOC Charge of Discrimination. ECF 66-1, at 10. To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies. *See McCray v. Md. Dep't of Transp.,* 662 F. App'x 221, 224 (4th Cir. 2016). To do so, a plaintiff must

---

[7] The Court notes that while Defendant seeks to seal the exhibits, the relevant information contained in the exhibits is referenced throughout the Motion. Thus, the public will still have access to many of the facts relevant to the decision, but the personnel records will remain sealed.

file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). Because Maryland is a "deferral" state, a claim must be filed no more than 300 days after the alleged unlawful employment practice. *See Garnes v. Maryland*, Civ. No. RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), aff'd, 267 F. App'x 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e–5(b). If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e–5(f)(1). On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of her right to sue in court. *Id.* § 2000e–5(b), (f)(1). This notice is commonly called a "right-to-sue letter." *See, e.g., Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc). A complainant has 90 days to file suit in federal or state court after being notified of the right to sue. *Id.* § 2000e–5(f)(1).

Here, Defendant argues that Plaintiff exceeded the 300-day window because he filed his charge on September 29, 2020, more than 300 days after the alleged incident with Handley on August 2, 2019. *See* ECF 66-1, at 12; ECF 66-28. However, Plaintiff alleges in his amended complaint that he filed his charge on May 26, 2020, which was within the 300-day timeframe. ECF 16, at 10 ¶ 53. To support this assertion, Plaintiff attached a charge document in his response

in opposition to Defendant's motion to dismiss, which shows that Plaintiff filled out an initial charge form on May 26, 2020.[8] *See* ECF 25-5, at 2; *see also id.* at 8. Because Plaintiff submitted a charge document that reflects the date of May 26, 2020, the Court cannot hold as a matter of law that Plaintiff's suit is time-barred.

2.    <u>Defendant is entitled to summary judgment as a matter of law.</u>

Plaintiff alleges that Defendant discriminated against Plaintiff in violation of Title VII and Section 1981 by refusing to hire Plaintiff because of his race. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . [.]." 42 U.S.C. § 2000e-2(a)(1); *see also Goods v. Mayor & City Council of Balt.*, Civ. No. SAG-19-2519, 2020 WL 6135146, at *4 (D. Md. Oct. 19, 2020). Section 1981 states that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). "'Direct evidence' of discrimination must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Macedo v.*

---

[8] In Plaintiff's response in opposition to Defendant's motion to dismiss, Plaintiff also explained that he filed the charge on May 26, 2020, but ultimately re-filed the charge because the incorrect date of the incident was inadvertently placed on the first charge. ECF 25-1, at 4 n.1.

*Elrich*, Civ. No. GLS-20-3006, 2023 WL 4108270, at *4 (D. Md. June 21, 2023) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)). Similarly, "[a] plaintiff may [] prove a race-discrimination claim under § 1981 through 'direct or circumstantial evidence showing that an adverse employment action was [caused] by intentional discrimination aimed at the plaintiff's [race],' or through the 'burden-shifting framework' of *McDonnell Douglas*." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (brackets in original) (citing *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)); *see also Williams*, 370 F.3d at 423 (noting the *McDonnell Douglas* framework applies to failure-to-hire claims under § 1981).

Defendant analyzed Plaintiff's discrimination claims using the *McDonnell Douglas* framework. *See* ECF 66-1, at 15. Plaintiff failed to respond to the Motion. The Court will therefore evaluate Plaintiff's claims under the *McDonnell Douglas* framework because Plaintiff has not put forth any sworn evidence to demonstrate that Handley's alleged use of a racial slur bore directly on the contested employment decision.[9] *See Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003) ("What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."); *Campbell v. Prince George's Cnty. Maryland*, Civ. No. A.AW-99-870, 2001 WL 21257, at *6 (D. Md. Jan. 4, 2001) ("Isolated and ambiguous statements unconnected to a negative employment decision will not be deemed direct evidence of discrimination.").

---

[9] In Plaintiff's response in opposition to Defendant's motion to dismiss, Plaintiff attached an affidavit, which alleges that Handley called Plaintiff the n-word and "continually discriminated against [Plaintiff] due to [his] race." *See* ECF 25-6 (Carter Aff.), at 1. However, in his affidavit, Plaintiff does not provide any specific factual allegations connecting Handley's alleged use of the racial slur to the ultimate hiring decision in 2019.

There is evidence in the record reflecting that Handley used an offensive slur immediately followed by an admonition that Plaintiff's efforts to seek employment at BPD would, in Handley's view, always be futile. *See* ECF 79, at 3 (noting that Plaintiff reported to PIB that Handley said to Plaintiff, "[f]ucking [n word,] he'll never get a job as long as I'm here"). To be clear, the use of a racial slur of the kind at issue here undoubtedly reflects discriminatory views on the part of the declarant. And the alleged assertion that Plaintiff will never work at BPD so long as Handley is employed there appears to tie the racist comment to the hiring process. However, it must be repeated that "[d]irect evidence is 'evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude *and that bear directly on the contested employment decision.*'" *Gott v. Town of Chesapeake Beach, Md.*, 44 F. Supp. 3d 610, 615 (D. Md. 2014) (citing *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009)) (emphasis added). Here, in the absence of an opposition, it appears unrefuted that despite the alleged statement by Handley implying otherwise, Handley was not, in fact, involved in the 2019 employment decision at the heart of Plaintiff's discrimination claims. *See* ECF 80, at 1 (indicating Handley recused himself from Plaintiff's application process); ECF 66-25, at 2 ¶ 10 (affirming that Jones did not speak to Handley about Plaintiff's job application during the 2019 hiring process); ECF 87, at 1 (reiterating that Plaintiff's permanent disqualification was a result of Plaintiff's multiple traffic violations, multiple policy violations with his current employer, domestic violence issues, Maryland State tax delinquency, and integrity issues related to disclosures during the hiring process). What is more, it is similarly undisputed that it was Jones—an African American man of whom Plaintiff makes no accusations of alleged discrimination—who independently determined that Plaintiff should be disqualified from employment by BPD in 2019. ECF 86, at 1; *see James v. Verizon*, 792 F. Supp. 2d 861, 869–870 (D. Md. 2011) (holding that evidence that the decision maker is a "member of

the same protected class" as the plaintiff "weakens any possible inference of discrimination"). Absent a connection to the hiring decision itself, even a statement as repugnant as the one alleged to have been uttered by Handley does not represent legally cognizable direct evidence that the decision not to hire Plaintiff was impermissibly based on Plaintiff's race.[10] *See Gott*, 44 F. Supp. 3d at 615 ("[A] plaintiff must show a nexus between the discriminatory statements and the employment action."). Accordingly, Plaintiff has not established direct evidence of discrimination and the Court will employ the burden-shifting framework announced in *McDonnell Douglas*.

Plaintiff can still show a Title VII violation by utilizing the burden-shifting framework first established in *McDonnell Douglas*, 411 U.S. at 792. Under the *McDonnell Douglas* framework, a plaintiff bears the initial responsibility of establishing a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 802; *see also Evans v. Tech's. Applications & Servs. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) ("Under [the *McDonnell Douglas*] three-step framework, the

---

[10] Had Plaintiff produced evidence at the summary judgment stage that Handley was involved in Plaintiff's 2019 employment decision, or even that the racial animus revealed by Handley's statement otherwise affected Plaintiff's hiring decision, the result may be different given that this would, at minimum, create a genuine dispute of material fact as to whether Plaintiff was not hired for the position because of his race. Even Plaintiff's amended complaint, however, fails to draw a factual connection between Plaintiff's non-hiring and Handley's alleged animus. The closest thing to such an allegation is Plaintiff's recollection of a question posed by then City Councilman President Jack Young to the police commissioner: "[W]hy is there another qualified applicant in front of him trying to come over to the City police force and is being stopped by the same guy, 'James Handley.'" ECF 16, at 3. To the extent this can be construed as proof that Handley had a role in the decision not to hire Plaintiff, the amended complaint, like Plaintiff's original pleading, is unverified and cannot be treated as an affidavit. *Germain v. Shearin*, 725 F. App'x 225, 226 (4th Cir. 2018) ("A verified complaint contains a sworn statement indicating its contents are true and may be treated as an affidavit."). Under the circumstances presented here the Court can only rely on facts supported by the record, not assertions in the pleadings. *See Bouchat*, 346 F.3d at 522 ("A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'") (citations omitted). Additionally, the alleged statement by Young was made *before* the phone call incident and Defendant has produced unrebutted evidence that Handley recused himself from the 2019 hiring process after the phone call. ECF 80.

plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence."). In the failure-to-hire context presented here, a plaintiff must show, by a preponderance of the evidence, that: (1) he belonged to a protected class; (2) he applied for a position; (3) he was qualified for that position; and (4) his application was rejected under circumstances that give rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). The failure to demonstrate one of these required elements is fatal to the establishment of a prima facie case. *See Hemphill v. Aramark Corp.*, No. 12-cv-1584-ELH, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), aff'd, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff does establish a prima facie case, "the burden then shifts to the employer to 'produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 144 (D. Md. 2019) (citations omitted). Once a defendant produces a legitimate, non-discriminatory reason, the plaintiff must show, again by a preponderance of the evidence, that the legitimate reason was a pretext for discrimination. *Adams v. Trustees of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558–59 (4th Cir. 2011).

It is undisputed that Plaintiff is an African American male and thus a member of a protected category. ECF 16, at 2 ¶ 1; ECF 66-1, at 4. It is also undisputed that Plaintiff applied for a position with the BPD, ECF 77, at 1, thus Plaintiff's prima facie case hinges on satisfaction of the third and fourth elements.

The undisputed facts establish that Plaintiff was not qualified for the position because he has documented integrity and disciplinary issues which disqualify him from employment with BPD. *See* ECF 70, at 1 (explaining Plaintiff's 2016 application process was discontinued as a

result of Plaintiff's possession and operation of a vehicle with fraudulent tags, the suspension of

his police powers, and criminal and administrative charges related to theft and misconduct in the

office); ECF 72, at 1, 10 (explaining disqualification in 2017 resulted from Plaintiff's violation of

BCSP's policies, a criminal summons for domestic violence, multiple traffic violations, allegations

of excessive force, failure to pay child support, failure to pay taxes, failure to disclose information

during the application process, and discrepancies in the information provided by Plaintiff and the

information obtained by the background investigator); ECF 87, at 1 (explaining disqualification in

2019 was based on multiple traffic violations, multiple policy violations with current employer,

domestic violence issues, Maryland State tax delinquency, and integrity issues related to

disclosures during the hiring process). Additionally, the Recruitment Section's SOP Manual also

required Plaintiff's disqualification. *See* ECF 88, at 27 (indicating that omissions, minimizations,

or falsifications at any stage of the process will disqualify an applicant from current and any future

applications); *see also id.* at 29 (listing "telling a lie at any stage of the process," domestic violence,

failure to register with the Selective Service and failure to pay back-taxes/child support as potential

disqualifiers in the SOP). Even when viewing the record in the light most favorable to Plaintiff,

no rational jury could find that Plaintiff was qualified for the position he applied for. Plaintiff had

numerous reasons for disqualification in his record based on the objective criterion listed in the

SOP Manual, including repeated dishonesty in the application process. *See generally* ECF 72.

Accordingly, Plaintiff's failure to make out a prima facie case of discrimination entitles Defendant

to summary judgment.

Moreover, even assuming Plaintiff was qualified for the position, BPD has produced

uncontroverted evidence of its legitimate and nondiscriminatory business reasons for not hiring

Plaintiff. It is clear from the record that both investigators assigned to review Plaintiff's 2016 and

2017 applications for BPD employment based their recommendations for disqualification on Plaintiff's prior employment and disciplinary history. In 2016, Corriveau[11] indicated in her close-out letter that Plaintiff was "currently under investigation by the Baltimore City School Police/Internal Investigation Division for obtaining several must appear citations for being in possession/driving a vehicle with fraudulent tags." ECF 70, at 1. The close-out letter also explained that Plaintiff was suspended pending the outcome of the investigation and that he had been charged criminally by BCSP for "misconduct in office/theft less than $100."[12] *Id.* Corriveau discontinued the processing of Plaintiff's application based on these findings. *Id.* In 2017, Villodas[13] affirmed that she recommended Plaintiff be disqualified from employment "based on his internal affairs incidents while employed at the Baltimore City School Police, traffic violations, discrepancies in the information he provided, failure to keep an active driver's license, and failure to pay taxes." *See* ECF 66-9, at 2 ¶ 7; *see also* ECF 72, at 10 (listing the same reasons for disqualification in the preliminary close-out letter dated October 10, 2017).[14]

In 2019, Plaintiff was once again disqualified from employment with BPD by Jones based on Plaintiff's same prior disciplinary history and integrity issues. ECF 86, at 1. Davis, the background investigator in 2019, referenced Villodas's 2017 findings in his recommendation for disqualification. ECF 83, at 1. Davis also uncovered a new 2019 BCSP disciplinary incident

---

[11] Detective Corriveau was the background investigator assigned to investigate Plaintiff's application in 2016. ECF 70, at 1.

[12] The criminal charges were ultimately dismissed. ECF 69, at 1. However, Plaintiff was suspended from duty for 10 days as a result of the time theft incident. ECF 71, at 2.

[13] Detective Villodas was the background investigator assigned to investigate Plaintiff's application in 2017. ECF 66-9, at 1 ¶¶ 3, 4.

[14] Additional reasons for disqualification included failure to comply with child support obligations, *id.* at 10, and previously receiving a criminal summons for domestic violence. *Id.* at 1.

involving Plaintiff's failure to obtain an approved Secondary Employment form and failure to provide his gun permit status. *Id.* at 8. In addition, the following reasons were given by Detective Sergeant Brown for Plaintiff's permanent disqualification in 2019: "[m]ultiple traffic violations, multiple policy violations with his current employer [BCSP], domestic violence issues, Maryland State tax delinquency, and integrity issues related to disclosures during the Baltimore Police hiring process."[15] ECF 87, at 1. Notably, these same factors also led to Plaintiff's denial of employment with both the Anne Arundel County Police Department and the Annapolis Police Department. *See* ECF 83, at 10–11 (recommending that further processing of Plaintiff's employment application by Anne Arundel County PD be terminated); ECF 84 (recommending that Plaintiff not be considered for hire by Annapolis PD).

Additionally, Plaintiff has neither produced evidence to rebut the results of Davis's background investigation or Jones's approval of the recommendation nor demonstrated that the proffered reasons for disqualifying him from employment were a pretext for discrimination. *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[Plaintiff] cannot rely on his 'own assertions of discrimination[, which] in and of themselves are insufficient

---

[15] Brown also listed a number of issues in a "past issues summary" including "excessive force allegations (not sustained) but not disclosed as required and asked during the application process," the receipt of "a criminal summons for domestic assault (not sustained)," "significant IAD history regarding an incident involving the applicant working but off post and in the Horseshoe casino that resulted in numerous sustained departmental charges," several "must appear traffic citations from Maryland Transportation Authority Police (driving with fraudulent tags, etc.)," a "driver's license suspension (child support)," and a "Maryland State Tax delinquency ($10,000)." ECF 87, at 1. Brown also listed the following in a "current issues summary": "secondary employment violation and resulting reprimand with current employer[,] selective service non-compliance[,] owes Maryland State taxes ($12,000+)[, and] disqualification from the Anne Arundel Police Department applicant process (did not disclose excessive force allegations)." *Id.* Brown stated that the "aggregate accumulation of specific incidents disqualifies applicant Carter from employment." *Id.*

to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'") (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)).

The Court acknowledges the gravity of Handley's alleged use of a racial slur toward Plaintiff and obviously condemns the use of such language in the strongest terms. However, there is no dispute of material fact that at the time Plaintiff applied for the position in 2019, which was prior to Handley's alleged use of the racial slur, Plaintiff had already been permanently disqualified from employment with BPD. *See* ECF 76, at 1 (email from August 2018 denying Plaintiff's request to reapply and notifying him that denial of the request was "a permanent disqualification to apply for the position of Police Officer"). Critically, there is no genuine dispute that the previous employment denials were based on anything other than Plaintiff's aforementioned disciplinary record and integrity issues.[16] The 2019 denial of employment was attributed to these same reasons, in addition to newly uncovered disqualifying factors discovered by Davis.

In sum, Defendant attached numerous documents to its Motion that articulate specific, non-discriminatory reasons for not hiring Plaintiff. *See* ECF 70; ECF 72; ECF 83; ECF 87. Plaintiff has not offered any evidence to rebut these assertions. Critically, Handley did not make the 2019 hiring decision; he recused himself from the process. ECF 80, at 1–2. Jones approved Davis's recommendation for disqualification, ECF 83, at 13, and Jones affirmed that he did not confer with Handley about Plaintiff's application at any point in the process. ECF 66-25, at 2 ¶ 10.

---

[16] As previously noted, contemporaneous reports from background investigators reviewing Plaintiff's employment applications in 2016 and 2017 show that Plaintiff was under investigation by the BCSP Internal Investigation Division for possession and operation of a vehicle with fraudulent tags and time theft. ECF 70, at 1; ECF 68, at 1. In addition, Plaintiff had been charged with two counts of misconduct in office/theft less than $100.00. ECF 70, at 1. Further, it is undisputed that there were discrepancies in the information provided by Plaintiff and the information obtained by the internal affairs division, leading to an inference of Plaintiff's dishonesty in the employment application process. ECF 72, at 10.

Accordingly, summary judgment is granted in favor of Defendant regarding Plaintiff's Title VII and Section 1981 discrimination claims because Plaintiff cannot, as a matter of law, demonstrate that his denial of employment was the result of unlawful racial discrimination.

### C.    Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claims.

Plaintiff also brings retaliation claims under Title VII and § 1981.  ECF 16, at 19, 22. Plaintiff has not presented direct evidence of retaliation in this case, so the Court will turn again to the burden-shifting framework.  The *McDonnell Douglas* framework applies to failure to hire, termination, and retaliation claims under Title VII and Section 1981. *See, e.g., Williams,* 370 F.3d at 430; *see also Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018) ("The *McDonnell Douglas* framework was initially developed for Title VII discrimination cases, but since the *McDonnell Douglas* decision, the framework has been held to apply in discrimination cases arising under § 1981, and in retaliation cases under Title VII and § 1981[.]") (citations omitted).

Under this framework, the plaintiff must first make a prima facie showing of retaliation by proving that: (1) he engaged in a protected activity; (2) his employer took a materially adverse action against him; and (3) there was a causal link between the two events. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) ("A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements [as a Title VII retaliation claim].").  An employee is protected from retaliation for reporting both "employment actions actually unlawful under [§ 1981]" and "employment actions she reasonably believes to be unlawful." *Ali*, 832 F. App'x at 172 (quoting *Boyer-Liberto*, 786 F.3d at 282). "[I]n line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she

would not have suffered a materially adverse action." *Id.* at 172–73 (citing *Guessous*, 828 F.3d at 217–18; *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340 (2020)). "In order to survive a motion for summary judgment, plaintiff must put forth some evidence supporting each element essential to his claims." *Hemphill*, 2014 WL 1248296, at \*19 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The plaintiff then bears the ultimate burden of proving that the proffered reason is pretext for unlawful retaliation. *Id.*

Here, Plaintiff alleges that he "engaged in protected activity by lodging complaints against Defendant Handley dating back to 2017, when he discussed the discriminatory practices with Deputy Commissioner Darryl DeSousa," ECF 16, at 13, 24, and that he "suffered a material adverse employment action by being denied a position as a BPD officer based on Defendant Handley's hostility towards African Americans as well as in retaliation for Plaintiff engaging in protected activity by complaining to Deputy Commissioner DeSousa." ECF 16, at 20. Because Plaintiff failed to engage in discovery or respond to the instant Motion, it is not clear that Plaintiff has met even the initial burden to make out a prima facie case for retaliation. The unsworn allegations in Plaintiff's amended complaint are insufficient to show the causal relationship between Plaintiff's complaints to DeSousa and Handley's alleged denial of Plaintiff's employment as a result of those complaints. *See Bouchat*, 346 F.3d at 522 (explaining that the court may rely only on facts supported in the record, not simply assertions in the pleadings). This is especially true given that Defendant produced evidence showing that Handley was not involved in the 2019

hiring decision. *See* ECF 80, at 1 (indicating Handley recused himself from Plaintiff's application process); ECF 66-25, at 2 ¶ 10 (affirming that Jones did not speak to Handley about Plaintiff's job application during the 2019 hiring process). Similarly, to the extent Plaintiff asserts that the PIB complaint was causally related to his employment denial, Plaintiff has produced no evidence that the PIB complaint against Handley was known by BPD decisionmakers in 2019 or that it played any role in the decision not to hire him. In fact, the record shows that Plaintiff's application was assigned to Jones for review, despite Plaintiff's prior permanent disqualification, and Jones affirmed that he did not speak with Handley about the decision to not hire Plaintiff in 2019. ECF 66-25, at 2 ¶ 10.

Even assuming that Plaintiff has established a prima facie case of retaliation with respect to his complaints to DeSousa and the PIB complaint, his claim fails because he cannot show that Defendant's legitimate, nondiscriminatory reason for the action was pretextual.[17]

Defendant's proffered reasons for employment disqualification in 2019 were effectively the same reasons Plaintiff was disqualified in 2016 and 2017. Plaintiff was disqualified largely based on Villodas's 2017 findings, which occurred before the complaints to DeSousa, the PIB investigation, and the EEOC charge. *See Univ. of Texas Southwestern Medical Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). In short, the record before the Court establishes that there was significant,

---

[17] Where the employer has proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment, it is a common practice to assume, without deciding, that the plaintiff has established a prima facie case. *See, e.g., Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008); *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 736–37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002).

contemporaneous documentation establishing that the adverse employment action (*i.e.*, failure to hire) was a result of Plaintiff's employment and disciplinary record, which contained multiple grounds for disqualification, as detailed in BPD's Recruitment Section SOP Manual. The factors disqualifying Plaintiff from employment included, *inter alia*, time theft, violations of current employer's policies, failure to disclose relevant disciplinary history, Selective Service non-compliance, failure to pay child support, failure to pay taxes, and prior administrative and criminal charges. ECF 87, at 1. Thus, the Court finds that Defendant has produced non-retaliatory reasons for its action, which are substantiated by ample record evidence.[18]  Plaintiff does not provide any evidence to show that the proffered reasons are pretextual. *See Celotex*, 477 U.S. at 322–23 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). As such, Defendant is entitled to summary judgment.

> **D.    Defendant is Entitled to Summary Judgment on Plaintiff's MFEPA Claims.**

The Maryland Fair Employment Practices Act ("MFEPA") prohibits discriminatory employment practices based on an individual's protected characteristics, including one's race, within the State of Maryland. Md. Code Ann. State Gov't ("SG") § 20-606 (2021). MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc.*, Civ. No. RWT-09-2402,

---

[18] To the extent Plaintiff alleges that the decision to not hire him was causally related to the filing of his EEOC charge, this claim fails because Plaintiff engaged in protected activity *after* the adverse employment decision. Plaintiff filed the EEOC Charge on May 26, 2020. *See* ECF 25-5, at 2. But Plaintiff's application was rejected on November 21, 2019, before Plaintiff engaged in the protected activity. ECF 66-25, at 1–2. Thus, this theory of retaliation fails. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). Indeed, the Supreme Court of Maryland has

recognized that MFEPA is "modeled on federal anti-discrimination legislation." *Doe v. Catholic*

*Relief Servs.*, 300 A.3d 116, 126 (Md. 2023) (quoting *Molesworth v. Brandon*, 672 A.2d 609, 614

(Md. 1996)). Maryland has a well-established "history of consulting federal precedent in the equal

employment area." *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011) (citing *Haas v.*

*Lockheed Martin Corp.*, 914 A.2d 735 (Md. 2007)); *see also Hemphill*, 2014 WL 1248296, at *8

("Maryland courts interpreting MFEPA have often found federal cases arising under Title VII to

be persuasive authority.") (collecting cases). For instance, Maryland follows the burden-shifting

framework set out in *McDonnell Douglas Corp.*, 411 U.S. at 792, when resolving a claim of

retaliation and employment discrimination. *Lockheed Martin Corp. v. Balderrama*, 134 A.3d 398

(Md. App. 2016); *Edgewood Mgmt. Corp. v. Jackson*, 66 A.3d 1152 (Md. App. 2013).

    Plaintiff alleges that the same conduct violated both Title VII and MFEPA. *See* ECF 16,

at 10–15. As such, the Court's analysis under Title VII and MFEPA is the same. Because

Plaintiff's federal discrimination and retaliation claims fail as a matter of law, his state law claims

also fail. *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012) ("Plaintiff's

state law racial discrimination claim duplicates his Title VII racial discrimination claim and fails

for the same reasons.").[19]

    In sum, the Court concludes, after considering the uncontested evidence produced by

Defendant, that no reasonable factfinder could find that Plaintiff has established a prima facie case

for discrimination or retaliation under any of the statutes cited in Plaintiff's amended complaint.

More specifically, viewing the evidence in the light most favorable to Plaintiff, no reasonable juror

---

[19] Because the MFEPA claims fail for the same reasons the federal claims fail, the Court finds it
unnecessary to address the sovereign immunity issue raised by Defendant. ECF 66-1, at 21–23.

could conclude that "the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination" with respect to his discrimination claims, *Sempowich v. Tactile Sys. Tech., Inc*, 19 F.4th 643, 649–50 (4th Cir. 2021), or "that a *causal relationship* existed between the protected activity and the adverse employment activity" with respect to his retaliation claims. *Foster*, 787 F.3d at 250 (emphasis added). Even assuming, however, that Plaintiff makes out the prima facie case for discrimination and retaliation, Defendant has produced legitimate, non-discriminatory, and non-retaliatory reasons for failing to hire Plaintiff. Plaintiff has failed to adduce any evidence that these reasons are pretextual. Thus, Defendant is entitled to summary judgment.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted.

A separate implementing Order will issue.

Dated: <u>January 10, 2025</u>                                   <u>/s/</u>

                                                            Brendan A. Hurson
                                                            United States District Judge

28